**Robert WINTERS, Plaintiff,**

**v.**

**Captain Henry BECK, Superintendent of the Pulaski County Penal Farm, and Clint Cavin, Surety, Defendants.**

**No. LR–66–C–227.**

United States District Court
E. D. Arkansas, W. D.

March 5, 1968.

John W. Walker, Harold Anderson, Little Rock, Ark., for plaintiff.

Richard B. Adkisson, Pros. Atty., James H. Harrison, Jr., Deputy Pros. Atty., Little Rock, Ark., for defendants.

GORDON E. YOUNG, District Judge.

## MEMORANDUM OPINION

On May 13, 1965 the petitioner, Robert Winters, was convicted in the Little Rock Municipal Court of immorality, a misdemeanor under the provisions of a City Ordinance. His punishment was fixed at 30 days in jail and a fine of $254.00, including costs. Being an indigent and unable to pay the fine, he was sentenced to the Pulaski County Penal Farm for a total of 284 days as provided in Ark. Stats.Ann. § 19-2416 (1956 Repl. Vol.).[1]

At his trial petitioner was not represented by counsel. He did not ask for the assistance of counsel, nor was he informed by the trial judge of any right to counsel.

Petitioner did not exercise his right by appeal to a trial de novo in the Pulaski County Circuit Court for the reason, it is alleged in the pending petition, that "not having the advice of counsel, petitioner was not aware of further remedies provided by the Law of Arkansas."

After his time for appeal had expired, and having served a portion of his sentence, he secured counsel, who filed a petition for a writ of habeas corpus, which was denied in both the Little Rock Municipal Court and the Pulaski Circuit

---

1. "19-2416. *Persons in jail for violation of city or town ordinance may be required to work on streets and improvements.*— Prisoners confined in the county jail or city prison, by sentence of the Mayor or Police Court, for a violation of a city or town by-law, or ordinance, or regulation, may, by ordinance, be required to work out the amount of all fines, penalties, forfeitures and costs, at the rate of one dollar [$1.00] per day on the streets or other improvement, under the control of the City Council. [Act Mar. 9, 1875] "

Court. He appealed to the Supreme Court of Arkansas, alleging that his constitutional rights were violated because no lawyer had been appointed to defend him on the misdemeanor charge in the Municipal Court. The Supreme Court denied his petition, saying that Winters had not indicated that he wanted an attorney, and: "We have held that no duty is imposed upon the trial court to appoint counsel for a defendant charged with a misdemeanor." 239 Ark. 1151, 397 S.W.2d 364.

The Supreme Court of the United States denied certiorari, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137, Justices Black and Stewart dissenting.

Prior to its decision, the Arkansas Supreme Court had admitted petitioner to bail upon a nominal bond of $100.00. He still remains on that bond.

After relief was denied by the United States Supreme Court, Winters filed a petition for writ of habeas corpus in this Court, alleging that his sentence was unconstitutional and void for these reasons:

1. Petitioner was tried and convicted without benefit of counsel and without being advised of his right to counsel;

2. The penalties assessed against him by the Municipal Court of Little Rock deprive him of the equal protection of the laws in that the substitution of 254 days in jail as punishment for his failure to pay his fine and court costs of $254.00 as provided by the Arkansas Statute arbitrarily imposes imprisonment for no other reason than indigency;

3. The ordinance pursuant to which he was convicted violates the due process clause of the Fourteenth Amendment in that it is vague, ambiguous, and uncertain.

On February 14, 1967 the Court dismissed the petition on the ground that the petitioner, being at liberty on bond, was not under such restraint as was necessary to permit him to file a petition for a writ of habeas corpus. Rowland v. State of Arkansas, 179 F.2d 709 (8 Cir. 1950).

On March 31, 1967 the United States Court of Appeals for the Eighth Circuit remanded the cause to this Court "for a rehearing on the merits in conformity with the teaching of the Supreme Court of the United States in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed. 2d 285."

Frankly, it had not occurred to this Court that Jones v. Cunningham was applicable.

In that case it was said:

"A United States District Court has jurisdiction under 28 U.S.C. § 2241 to grant a writ of habeas corpus 'to a prisoner * * * in custody in violation of the Constitution * * * of the United States.'" 371 U.S. 236, 83 S.Ct. 373.

The question there was whether a state prisoner who had been placed on parole was "in custody" within the meaning of that section. There, as stated in the opinion, p. 242, p. 377 of 83 S.Ct. petitioner was:

"confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life."

The opinion went on to say, p. 243, p. 377 of 83 S.Ct.:

"While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute;"

Petitioner is under no comparable restrictions under his bail here. There is no limitation upon his travel, his employment, his associates, or anything

796

else. He may do as he pleases. He is only required to render himself amenable to the order and process of the court. This is no more restraint than if without bond or bail a summons had been issued directing him to appear before the court and be amenable to its orders.

If the Mandate of the Court of Appeals means that we should consider whether or not the petitioner is in custody as taught in Jones v. Cunningham, we would hold that he is not and that the petitions should be dismissed as being prematurely brought. However, the Mandate is subject to the construction that the Court of Appeals has found that petitioner is now in such "custody" and that this Court should hear the petition on its merits. We proceed to do so.

*The Attack on the Ordinance.*

■ Ordinance No. 25–121 of the City of Little Rock reads as follows:

"It is hereby declared to be a misdemeanor for any person to participate in any public place in any obscene or lascivious conduct, or to engage in any conduct calculated or inclined to promote or encourage immorality, or to invite or entice any person or persons upon any streets, alley, road or public place, park or square in Little Rock, to accompany, go with or follow him or her to any place for immoral purposes, and it shall be unlawful for any person to invite, entice or address any person from any door, window, porch or portico of any house or building, to enter any house or to go with, accompany or follow him or her to any place whatever for immoral purposes.

"The term 'public place' is defined to mean any place in which the public as a class is invited, allowed or permitted to enter, and includes the public streets, alleys, sidewalks and thoroughfares, as well as theaters, restaurants, hotels, as well as other places. The term 'public place' is to be interpreted liberally.

"Any person found guilty of violating the provisions of this section

shall, upon conviction, be fined in any sum not less than ten dollars, nor more than two hundred and fifty dollars or imprisoned for not less than five days nor more than thirty days, or both fined and imprisoned."

According to the evidence at the trial, petitioner and his woman companion were found in a state of undress on the "bed" in the women's rest room for the use of the public in a Little Rock hotel. It would seem that this is "obscene or lascivious conduct" in a "public place" by any standard. We do not think that the ordinance is void on its face, nor that its application here violated constitutional principles.

*Should Counsel be Appointed in all Misdemeanor Cases?*

Since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), several courts have considered the problem of whether or not *Gideon* requires that counsel be appointed for defendants in misdemeanor cases. Two of these cases are from the Fifth Circuit—McDonald v. Moore, 353 F.2d 106 (1965); and Harvey v. State of Mississippi, 340 F.2d 263—and these cases are cited by Mr. Justice Stewart in his dissent from the denial of certiorari in this case, Winters v. Beck, supra.

In Harvey v. State of Mississippi, after very informal proceedings before a justice of the peace the defendant entered a plea of guilty, with the understanding that he would receive a fine. Later the judge gave him a sentence imposing a fine of $500 and a 90-day jail sentence. The court carefully avoided deciding whether or not the rule in *Gideon* had been extended to misdemeanor charges in state tribunals, but apparently because of the jail sentence, and relying on the reasoning in Evans v. Rives, 75 U.S.App. D.C. 242, 126 F.2d 633 (1942), sustained petitioner's application for a writ of habeas corpus and voided his conviction.

In McDonald v. Moore, supra, the defendant had pleaded guilty in Florida to illegal sale of whiskey, which is a misdemeanor in that state. A sentence of

6-months in jail or a fine of $250 was imposed. She later attempted to withdraw her plea of guilty on the ground that she was without counsel at the time of arraignment, but this was denied by the court.

In discussing the problem the court said that now, under *Gideon*, states must provide counsel for indigent defendants in criminal cases to the same extent as the United States under like circumstances must do in Federal cases.

The court went on to say:

"It seems unlikely that a person in a municipal court charged with being drunk and disorderly, would be entitled to the services of an attorney at the expense of the state or the municipality. Still less likely is it that a person given a ticket for a traffic violation would have the right to counsel at the expense of the state. If the Constitution requires that counsel be provided in such cases it would seem that in many urban areas there would be a requirement for more lawyers than could be made available."

The court in *McDonald* said that in Harvey v. State, supra, the Fifth Circuit had rejected the "serious offense" rule. It said that it also thought that *Gideon* had repudiated the Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 ad hoc special circumstance rule of "an appraisal of the totality of facts in a given case." The opinion said that the court was without authority to authorize the announcement of a petty offense rule. Without setting forth any criterion the court said simply that the facts were similar to those in Harvey v. State and this was sufficient precedent for the court's order sustaining the application for a writ of habeas corpus and the vacation of conviction.

Two United States District Courts in the Fifth Circuit have held that *Harvey* and *McDonald* required them to enforce the right to counsel in misdemeanor cases in state courts. Petition of Thomas, 261 F.Supp. 263 (W.D.La.

1966); Rutledge v. City of Miami, 267 F.Supp. 885 (S.D.Fla.1967).

But in the Tenth Circuit in a case involving right to counsel before military tribunals, Chief Judge Murrah said, "And, it is an open question whether the Sixth Amendment right to counsel is applicable in misdemeanor cases." Kennedy v. Commandant, United States Disciplinary Barracks, etc., 377 F.2d 339 (1967).

There is an excellent discussion of the question in the case of Creighton v. State of North Carolina, 257 F.Supp. 806, (E.D.N.C.1966). This also arose on an application for a writ of habeas corpus. Petitioner was convicted of "attempt to commit a felony," which is a misdemeanor in North Carolina, and was sentenced to twelve months in jail. The ground for his application for habeas is that *Gideon* required that counsel be appointed to represent indigents tried for misdemeanor. He had not been represented by counsel. In discussing the practical problems involved, the court said, p. 808:

"However, unfortunate as it may seem to some, we live in a society where practical considerations must be taken into account. It seems obvious that counsel must be appointed to represent an indigent on trial for his life; it seems equally obvious that it is untenable to appoint counsel for an indigent who has parked too near a fireplug. Somewhere in between these two extremes a line must be drawn —the question for decision today is where."

The court called attention to language used by Mr. Justice Douglas in his dissent in Bute v. People of State of Illinois, 333 U.S. 640, 682, 68 S.Ct. 763, 784, 92 L.Ed. 986 (1948).

"It might not be nonsense to draw the Betts v. Brady line somewhere between that case [a sentence to imprisonment up to twenty years] and the case of one charged with violation of a parking ordinance, and to say the accused is entitled to counsel in the former but

not in the latter * * * yet it is the *need* for counsel that establishes the real standard for determining whether the lack of counsel rendered the trial unfair. * * * That need is measured by the *nature* of the *charge* and the *ability* of the *average* man to face it alone unaided by an expert in the law."

The court called attention to the fact that Mr. Justice Reed in Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948), noted that some members of the Court were of the opinion that the Sixth Amendment through the Fourteenth guarantees counsel in all state criminal proceedings where "serious" crimes are charged.

The District Court in North Carolina came to the conclusion that some misdemeanors involve punishment which results in a substantial deprivation of liberty or property, and in such cases counsel should be appointed to those unable to afford adequate representation.

On the other hand, it also recognizes that some offenses must be considered so minor that due process does not and cannot require that the guiding hand of counsel be provided to one charged with such a violation. * * *

"The court believes it unwise to set up arbitrary categories of misdemeanors and hold that in one category an accused is entitled to counsel while in another he is not, preferring instead to leave the matter to the discretion of the trial judge * * *.

"(t)his court thinks it wiser to follow the lead of Mr. Justice Douglas when he said that the need for counsel is measured by the nature of the charge (which would include the possible penalty) and the ability of the average man to face it without the aid of counsel, and use this standard as a partial guide to aid the trial judge in the exercise of his discretion. This provides a much more flexible and, the court believes, a much more satisfactory solution to the problem. It

recognizes that not every misdemeanor above a traffic violation requires the appointment of counsel while admitting that some cases of traffic violations can be imagined where appointment of counsel should be considered."

The court said that under the facts in this case it would not upset the exercise of discretion by the North Carolina trial judge, and the application for habeas was denied.

Arbo v. Hegstrom, 261 F.Supp. 397 (D.C.Conn.1966). This also involved a petition for a writ of habeas corpus. The defendant had pleaded guilty to a charge of nonsupport, a "non-felony" offense in Connecticut, and was sentenced to a term of one year in jail. Defendant was never told that the state would appoint counsel for him, nor was counsel appointed, although it was within the discretion of the trial judge to do so.

After discussing *Gideon* the court said, p. 400:

"Of course, from a pragmatic point of view, one can not help but struggle to find some rational line beyond which the absolute right to counsel becomes merely a privilege to be provided only as the particular tribunal sees fit. Although the administration of criminal justice is cloaked in abstract principles, these principles are jeopardized if the system could conceivably break under the sheer weight of the demands which it imposes. On a federal level, the recent Criminal Justice Act of 1964, 18 U.S.C. § 3006A, in recognition of the heavy burden which a requirement of counsel in every criminal case would impose, has made a practical and fair compromise with an absolute rule by prescribing appointment of counsel in other than 'petty offense' cases.[2]

"2. 18 U.S.C. § 1(3) defines a petty offense as 'any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both * * *.'"

The court went on to say that the facts in the case at bar did not demand an

extension of *Gideon* because in Connecticut the crime of nonsupport carried the "possibility of a substantial prison sentence" and for the petitioner this possibility became reality. "It would be a gross perversion of solid constitutional doctrine to find a rational distinction between one year in jail (a misdemeanor) and one year and a day in prison (a felony)."

The court said that if there was any vitality left in the "special circumstances" approach in non-felony cases its application would necessitate the issuance of the writ sought. "The single most relevant consideration under this test is the ability of the accused to fend for himself, without benefit of assistance from one trained in the law."

The court held that the failure of the state to apprise petitioner of his right to appointed counsel and to grant him that right if it was requested amounted to a denial of due process.

Another excellent discussion appears in the most recent case we have found, Brinson v. State of Florida, County of Dade, 273 F.Supp. 840 (S.D. Florida, September 20, 1967). It also arises in the Fifth Circuit.

Brinson filed a petition for a writ of habeas corpus seeking relief from his confinement in the Dade County Jail, Miami, Florida, attacking sentences imposed by the Metropolitan Court of Dade County.

After pleas of not guilty, petitioner was convicted of seven traffic offenses —three of them for careless driving, three for leaving the scene of an accident involving personal injury, and driving while under the influence of intoxicating liquor. The penal court provided penalties as follows:

1. Careless driving—fine not to exceed $300, or imprisonment not to exceed 60 days, or both.
2. Driving while under the influence of intoxicating liquor—for the first conviction, imprisonment not less than 48 hours nor more than 60 days, or by fine not less than $100 nor more than $500, or both; for the second conviction within three years of the first, imprisonment not less than ten days nor more than six months, plus fine; and for a third conviction within five years of first conviction, imprisonment of not less than 30 days nor more than 12 months.
3. Leaving the scene of an accident involving personal injuries—for first conviction, imprisonment for not more than 60 days or a fine of not more than $500, or both. On second or any subsequent conviction, imprisonment of not more than one year or by fine of not more than $1,000, or both.

For each of the careless driving convictions petitioner was sentenced to pay a fine of $50 or serve 5 days in jail; for each of the convictions for leaving the scene of an accident he was sentenced to a jail term of 20 days and a fine of $200, and in default of payment, an additional term of 20 days; for driving while under the influence of intoxicating liquor he was sentenced to 10 days in jail, a fine of $250, or an additional term of 25 days if the fine were not paid. Thus, he was sentenced to serve a minimum jail term of 70 days, plus a total of 100 more days if he failed to pay the fines. He began serving his time in April, and having failed to pay any of the fine, he remained there until the Federal district court ordered his release in September.

The petitioner was not advised of a right to counsel or that an attorney would be appointed to represent him if he could not afford one.

The court said:

"It is my opinion that the right to assistance of counsel applies to state court prosecutions for *serious* offenses, whether they be labeled felonies or misdemeanors. The concept of due process embodied in the Fourteenth

Amendment requires counsel for all persons charged with serious crimes. * * *

"In the present case, the petitioner's conviction upon the second offense of leaving the scene of an accident involving personal injuries exposed him to a maximum sentence of imprisonment for one year. The third conviction of the same offense exposed him to the possibility of confinement for an additional year. When a defendant is exposed to possible imprisonment for one year, he is charged with a serious offense. Accordingly, I hold that petitioner was entitled to assistance of counsel in the Metropolitan Court to defend against the two charges aforementioned. The fact that the offense charged was * * * not termed a felony, is of no consequence. A man who is charged with an offense for which he can spend a year in jail is entitled to assistance of counsel regardless of whether the offense be labeled a felony or misdemeanor."

The court pointed out that Gideon v. Wainwright overruled the "special circumstances" test of Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, regarding right to counsel and that the Supreme Court has not explicitly recognized that the existence of the right depends on the seriousness of the penalty in misdemeanor and traffic cases. The concept, however, was utilized by the Supreme Court in the case of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. This case involved a juvenile delinquency proceeding in which Gault was determined to be a delinquent and he was committed to a state institution. On a habeas corpus petition he claimed he was denied right to counsel.

"The Supreme Court held that due process required that Gault receive assistance of counsel because 'the issue * * * whether the child [would] be found to be "delinquent" and subjected to the loss of his liberty for years [was] comparable in *seriousness* to a felony prosecution.' [Emphasis added] 387 U.S. at 36 [87 S.Ct. 1428, 18 L.Ed.2d 527]. The 'serious offense' rule, in other words, has been expressly used by the Supreme Court to determine the right to counsel."

The court pointed out that:

"In *Gault* the court cited the recommendations of the President's Crime Commission that counsel in juvenile cases was necessary to orderly justice. * * * Their recommendation is explicit: 'as quickly as possible, * * * counsel [should be provided] to every criminal defendant who faces a *significant penalty* if he cannot afford to provide counsel for himself.' [Emphasis added] * * * The meaning of the recommendation clearly is that all persons charged with a crime, measured by the magnitude of the penalty, should be entitled to counsel. On the other hand, the Commission recommends that 'petty charges' should be excluded from coverage."

The court stated that the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, divides public offenses into three categories: (1) felonies, (2) misdemeanors, and (3) petty offenses.

"The Act provides for the appointment of counsel in all cases other than petty offenses. A petty offense is defined as '[a]ny misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both * * *.' Title 18 U.S.C. § 1. Not only are funds not provided for court-appointed attorneys, but no duty is placed upon the United States Commissioner or the court to advise the defendant that he has the right to be represented by counsel. * * *

* * * * * *

"Accordingly, this Court holds that the constitutional right to counsel in non-felony cases depends upon the maximum possible penalty under the offense charged, this being the test whether or not a 'serious offense' is

involved. In order that rights of constitutional stature be uniformly applied, I hold that the minimum offense for which counsel must be provided is one which carries a possible penalty of more than six months imprisonment, which is the line of demarcation drawn in federal practice. In this case, Brinson's second and third conviction of leaving the scene of an accident involving personal injuries must be invalidated since the court failed to notify the defendant of his right to the assistance of counsel."

In a footnote to his dissenting opinion in Winters v. Beck, supra, Mr. Justice Stewart said, "In Arkansas, some misdemeanors are punishable by up to three years' imprisonment. [Ark.Stats.Ann. § 41–805 (1964 Repl.Vol.).]" (The statute cited in this footnote is the penalty provided for conviction of a third offense of illegal cohabitation.)

We do not think that the Sixth Amendment requires the appointment of counsel for indigent defendants in all misdemeanor cases without regard to the nature of the offense charged nor the possible punishment. If we were required to draw a line we would be inclined to follow the Florida District Court in *Brinson* and use the standard of a petty offense as defined in 18 U.S.C. § 1(3).

We do not think that on its face the sentence given petitioner here of 30 days in jail plus a fine of $254 including costs, coupled with the relatively simple nature of the charge, is such as to constitute a "serious offense" as that term is used in the cases' discussion of *Gideon*.

Our problem here, however, is complicated by Arkansas' archaic statute adopted in 1875, referred to by Mr. Justice Stewart as the "dollar-a-day" statute. For an indigent, this translates a $254 fine plus 30 days in jail to a total of 284 days' (approximately 9½ months) imprisonment. By any standard this would seem to be a serious deprivation of a defendant's liberty.

## May an Indigent be Imprisoned for Failure to Pay a Fine?

It is argued by petitioner that the substitution of 254 days in jail as punishment for petitioner's failure to pay his fine and court costs arbitrarily imposes imprisonment for no other reason than indigency. Petitioner cites Nemeth v. Thomas, 35 Law Week 2320 (N.Y.Sup. Ct., Dec. 5, 1966), where the defendant was guilty of 138 traffic offenses. Unable to pay the fines, he had been confined in the workhouse for eight months and he still had approximately 12 months left to serve. The court held that continuing imprisonment would constitute "cruel and inhuman punishment" and be in violation of the Equal Protection Clause.

Also cited is a dissenting opinion of Judge Edgerton in Wildeblood v. United States, 284 F.2d 592 (D.C.Cir. 1960), which indicated that when a person cannot pay a fine and is therefore imprisoned, the constitutional question arises: "Few would care to say there can be equal justice where the kind of punishment a man gets depends on the amount of money he has."

However, the majority held that when a party is convicted of an offense and sentenced to pay a fine, it is within the discretion of the court to order his imprisonment until the fine shall have been paid (citing Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877, and Hill v. United States ex rel. Wampler, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 in which the Supreme Court said: "In the discretion of the court the judgment may direct also that the defendant shall be imprisoned until the fine is paid. * * * ").

We are not willing to say that imprisonment in lieu of payment of a fine in the case of an indigent is unconstitutional *per se*. We do say here, however, that the interaction of the "dollar-a-day" statute of Arkansas with a $254 fine plus a 30-day jail sentence constituted a "serious offense," and the failure of the trial court to notify petitioner of his right to the assistance of counsel and

offer him counsel if he was unable financially to retain counsel, rendered the judgment of conviction and sentence constitutionally invalid.

An order will be entered by the Court granting the City of Little Rock a reasonable time to retry petitioner. If he is not retried within such period, the writ of habeas corpus will be issued upon application of petitioner's counsel.