## 39735. ROEMHILD et al. v. THE STATE.

BELL, Justice.

This case concerns the constitutionality of OCGA § 20-2-690 (Code Ann. § 32-2104), the Georgia compulsory school attendance law, which provides that every parent having control of a child between the ages of seven and sixteen shall enroll the child in and send the child to a public or private school.[1]

The appellants, Terry and Vickie Roemhild, are the parents of three school-age children. In late September of 1981 they were arrested for violating the compulsory attendance law by allegedly failing to enroll their children in a public or private school for the period August 24 to September 18, 1981. The Roemhilds moved to dismiss the charges on various constitutional grounds, and also defended on the basis that the children were being taught at home in a private school operated by the appellants.

There was a bench trial of the case, at which the evidence showed that appellants are both high school graduates, and that, although Vickie had been a substitute teacher in the Head Start program one summer, and had taught in Sunday schools and Bible schools, neither parent has any formal training or background to be qualified as a teacher; accordingly, neither holds a teacher's certificate from the State Board of Education.

The Roemhilds testified that their decision to teach their children privately stemmed partly from their beliefs in God and His laws. They are members of the Worldwide Church of God, and they testified that, although their church's doctrine did not require them to withhold their children from public schools, they felt the public

---

[1] OCGA § 20-2-690 (a) (Code Ann. § 32-2104). Every parent, guardian, or other person residing within this state having control or charge of any child or children between their seventh and sixteenth birthdays shall enroll and send such child or children to a public or private school; and such child shall be responsible for enrolling and attending a public or private school under such penalty for noncompliance with this subsection as is provided in subsection (b) of this Code section unless his failure to enroll and attend is caused by his parent, guardian, or other person, in which case the parent, guardian, or other person alone shall be responsible; provided, however, that tests and physical exams for military service and the National Guard and such other absences as may be approved by the State Board of Education or the local board of education shall be excused absences.

(b) Any parent, guardian, or other person residing in this state who has control or charge of a child or children and who shall violate this part shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to a fine not to exceed $100.00 or imprisonment not to exceed 30 days, or both, at the discretion of the court having jurisdiction. Each day's absence from school in violation of this part shall constitute a separate offense.

schools were undesirable because their religious beliefs would not be transmitted at those schools. In particular, they were convinced that public schools were unsafe and immoral, did not provide a quality education, and had already had a disruptive effect on their children, and they held the personal religious view that they had a duty to educate their children themselves and thereby avoid these injurious effects.

Accordingly, in July of 1981 the Roemhilds began to teach their children at home, and, because they thought their teaching successful, they decided to hold their children out of the public school system during the regular school year and continue their home education. In a letter dated September 11, 1981, the original and copies of which were sent to the local school principal, the local superintendent of schools, and the state superintendent of schools, the Roemhilds informed these authorities of their decision, and stated that, since they wished their teaching to be legal, they had done much research and had discovered that Georgia law did not explicitly prohibit home education and did not explicitly require certification of parents before they could teach their children at home, and that, moreover, a federal court had said that if a parent was competent to teach and that if the education given by the parent was adequate, home education satisfied the compulsory attendance law.

The only response received by the Roemhilds was from the State Department of Education. It stated that the compulsory school attendance law had been interpreted to mean that all children had to be enrolled in a recognized educational institution, but that court decisions had raised questions as to the definition of a school. The letter further informed the Roemhilds that school officials at the state level were not in a position to tell the Roemhilds whether their desire to teach their children at home was lawful, and that whether the local school system would consider them in compliance with the law was a question that addressed itself to the Roemhilds, the local school system, and the local legal authorities. The letter did inform the Roemhilds that they needed to keep attendance records and submit them to the local attendance officer.

The Roemhilds also testified that they made further attempts to contact the local school principal and the local superintendent of schools to discover what requirements they needed to meet in order to teach their children at home and be in compliance with the law. They testified that they could get no one to discuss the matter with them, but that the local attendance officer did tell them that the local school superintendent did not consider home education to be in compliance with the law.

Despite the ambiguous responses from school officials, the appellants continued their program of home education. The Roemhilds testified that they hold classes five days a week, with Bible, English, spelling, and reading being taught by Ms. Roemhild from 8:00 a.m. to 12:00 p.m., and science, history, and math being taught by Mr. Roemhild from 5:00 p.m. to 8:00 p.m. There are no children other than the Roemhilds in the class. They testified that the schedule consists of fifty minute classes with ten minute breaks between each. The children are all taught in one of the bedrooms. Each child has a separate desk, and Mr. and Ms. Roemhild have a desk and chalkboard at the front of the room. Although there was evidence that in some courses each child is taught at his or her own level, there was evidence that the history and science lessons were the same for all three children. Additionally, although the evidence shows that the Roemhilds are making a good faith effort to acquire current teaching materials from a Christian learning organization, it also shows that several of the present texts are outdated.

In addition to the foregoing evidence, at trial it was stipulated that the State Department of Education has no authority to regulate private schools and cannot therefore require certification of private school teachers, and that state law does not define what is meant by private school.

The trial judge ruled that the Roemhilds had not sufficiently raised the constitutional issues, and were not operating a "private school" within the meaning of OCGA § 20-2-690 (Code Ann. § 32-2104). Accordingly, the judge found the Roemhilds guilty of nineteen violations of the compulsory school attendance law, which was an assessment of one violation for each school day the children were kept at home.

On appeal, the Roemhilds contend, among other things, that OCGA § 20-2-690 (Code Ann. § 32-2104) is impermissibly vague and violates due process, and that, in the event we nevertheless find the statute is constitutional, we should construe it to permit home education. As we find that the statute is impermissibly vague, we need not reach the latter contention.

1). Because the trial court held the Roemhilds had not sufficiently raised their constitutional challenges to OCGA § 20-2-690 (Code Ann. § 32-2104), we must first decide the correctness of this ruling. After examining the record, we are persuaded that the Roemhilds did sufficiently raise their vagueness challenge; therefore, that issue is properly before us on appeal. *Arp v. State,* 249 Ga. 403 (1) (291 SE2d 495) (1982); *Wallin v. State,* 248 Ga. 29 (1) (279 SE2d 687) (1981).

2). As to the issue of vagueness, we preface the following discussion of that question with the caveat that we are not now passing upon either the propriety of home education, the power of the legislature to exclude it, or the power of the legislature to approve it with or without restrictions, and we venture no opinion thereon. Instead, we focus solely upon the application of the "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U. S. 104, 108 (92 SC 2294, 33 LE2d 222) (1972). In this regard, a criminal statute must be sufficiently definite to give a person of ordinary intelligence fair notice of the behavior which is required or prohibited. Id. at 108; Rose v. Locke, 423 U. S. 48, 49-50 (96 SC 243, 46 LE2d 185) (1975); *Sabel v. State,* 250 Ga. 640 (1) (300 SE2d 663) (1983); *Caby v. State,* 249 Ga. 32 (1) (a) (287 SE2d 200) (1982). If it does not, then an individual cannot be held criminally responsible for the conduct which he or she could not have reasonably understood to be proscribed or imposed. Rose v. Locke, 423 U. S. at 49.

Moreover, a criminal statute must set sufficiently definite standards for those who are assigned the duty to enforce it so that basic policy matters are not impermissibly delegated "to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U. S. at 109; Smith v. Goguen, 415 U. S. 566, 572-573 (94 SC 1242, 39 LE2d 605) (1974); Hoffman Estates v. Flipside, Hoffman Estates, 455 U. S. 489, 498 (102 SC 1186, 71 LE2d 362) (1982); *Bullock v. City of Dallas,* 248 Ga. 164 (2) (281 SE2d 613) (1981).

These principles were recently applied by the Supreme Court of Wisconsin when it considered that state's compulsory school attendance law, one practically identical to our own, and held that it was void for vagueness. State v. Popanz, 332 NW2d 750 (4-8) (1983). The statute there provided that a person having control of a child between the ages of six and eighteen had to cause that child to regularly attend either a public or private school, and the statute was " 'singularly silent on the question of what constitutes a private school.' " Id. at 753.

Because neither the Wisconsin statute nor any administrative rules or regulations defined "private school" or specified criteria which had to be met to qualify as a "private school," the court found that the statute did not give sufficient notice to persons bent on obeying the law. Id. at 754. The court also found that the lack of definition of "private school" had the effect of delegating to local officials the basic policy decision of whether a child was attending a "private school," and thus posed the danger of arbitrary and

discriminatory enforcement. Id. at 755-756.

We find that the Georgia compulsory school attendance law suffers from the same infirmities. It is clear that neither OCGA § 20-2-690 (Code Ann. § 32-2104) nor any administrative rules or regulations define the phrase "private school" or prescribe criteria which an entity must meet to qualify as a "private school." The first concern we address is whether this lack of definition fails to provide fair notice of what constitutes a "private school" to parents wishing to have their children attend a "private school." Id. at 754. Grayned v. City of Rockford, 408 U. S. at 108; *Sabel v. State,* 250 Ga. at 641. In the instant case, the failure of the statute to provide fair notice is evident from the frustration experienced by the Roemhilds when they made a good faith effort to comply with OCGA § 20-2-690 (Code Ann. § 32-2104). They sought guidance from the statute itself, but found a notable dearth of information, and they also sought guidance from local and state officials, but again were unable to uncover any specific guidelines to follow. From their inquiries of local officials the Roemhilds received, at best, the conclusory statement by the local school attendance officer that his understanding was that the local school superintendent did not think home education was in compliance with the law, and from the State Department of Education they received a vague, noncommital response which provided no useful information.

Notwithstanding, the state argues that the phrase "private school" is one a person of ordinary intelligence would understand to mean an institution for the education of children which receives its funds from private sources. We, along with the Supreme Court of Wisconsin, are not convinced that this is the only definition which a person of ordinary intelligence could deduce. State v. Popanz, 332 NW2d at 755.

Although we agree that the word "school" clearly puts one on notice that an organized education must be provided to the child, there are many questions concerning the scope, nature, and place of the education which are left unanswered by the statute or applicable authorities. A sampling of these questions follows: Must the place of education be an "institution" which many children attend and which has an influx of new students and outflux of graduating students every year, or may parents teach or have their children taught at home? Must the "school" provide for the yearly sequential advancement of students or may students proceed at their own pace? What facilities, such as libraries, classrooms, or playing fields must the "school" provide? What must be the educational background of the teachers — must they be state certified or may "qualified" persons teach? What kind of curriculum and educational materials

must be provided — must they rigidly compare to public schools or can a "private school" vary their nature? And, finally, must the time schedule of a "private school" be consistent with that of a public school?

Because of the subjective nature of the interpretation of the term "schooling," and because OCGA § 20-2-690 (Code Ann. § 32-2104) leaves too many interpretive questions unanswered, we agree with the conclusion of the Supreme Court of Wisconsin that "the legislature or its delegated agent should define the phrase 'private school'; citizens or the courts should not have to guess at its meaning," State v. Popanz, 332 NW2d at 755, and we conclude that the statute is not sufficiently definite to provide a person of ordinary intelligence, who desires to avoid its penalties, fair notice of what constitutes a "private school." Id. at 755; *Sabel v. State,* 250 Ga. at 641; *Caby v. State,* 249 Ga. at 33.

Furthermore, the statute violates a second due process value in that it impermissibly delegates to local law enforcement officials, judges, and juries the policy decision of what constitutes a "private school." Id. at 755; Grayned v. City of Rockford, 408 U. S. at 108; *Bullock v. City of Dallas,* 248 Ga. at 166. This inadequacy, perhaps the statute's most notable one, is plainly demonstrated not only by the statute's failure to define "private school," but also by the State Department of Education's equivocal response to the Roemhilds telling them in effect that the decision of whether their actions complied with the compulsory school attendance law was up to the Roemhilds, local law enforcement officials, and local school officials.

Thus, OCGA § 20-2-690 (a) (Code Ann. § 32-2104) allows local officials to apply, and even necessitates that they apply, their own standards and predilections concerning education when determining if an individual's actions comply with the compulsory school attendance law. The resolution of whether someone's conduct violates OCGA § 20-2-690 (a) (Code Ann. § 32-2104) on such ad hoc and subjective standards poses the danger of arbitrary and discriminatory enforcement, which is contrary to due process values. State v. Popanz, 332 NW2d at 755; Grayned v. City of Rockford, 408 U. S. at 108-109. Although the enforcement of any law necessitates the exercise of some degree of judgment by local officials, Grayned v. City of Rockford, 408 U. S. at 114, we find that OCGA § 20-2-690 (a) (Code Ann. § 32-2104) fails to establish minimum guidelines for the exercise of such judgment, and is therefore unconstitutionally vague.

For the reasons given above, the Roemhilds' convictions must be reversed.

*Judgment reversed. All the Justices concur, except Clarke,*

*Gregory and Weltner, JJ., who dissent.*

DECIDED OCTOBER 25, 1983.

*James T. Irvin,* for appellants.

*V. D. Stockton, District Attorney, Michael J. Bowers, Attorney General, Patrick W. McKee, Assistant Attorney General,* for appellee.

*Ware, Parker, Johnson, Cook & Dunlevie, Wendell R. Bird,* amicus curiae.

WELTNER, Justice, dissenting.

In 1916, the General Assembly first enacted the Compulsory School Attendance Law (Ga. L. 1916, p. 101), requiring that "every parent, guardian, or other person having charge and control of a child between the ages of eight and fourteen years, who is not exempted or excused as hereinafter provided, shall cause the said child to be enrolled in and to attend continuously for four months of each year a public school of the district or of the city or town in which the child resides; . . . Such attendance at a public school shall not be required where the child attends for the same period some other school giving instruction in the ordinary branches of an English education. . . ." Three years later, the 1916 Act was repealed and supplanted by the Act of 1919 which, among other things, created the State Board of Education (Ga. L. 1919, pp. 288, 291).

That statute became, in essence, the present code section, except that the requirement is simply that the responsible person "shall enroll and send such child or children to a public or private school." OCGA § 20-2-690 (a) (Code Ann. § 32-2104).

The question presented in this appeal is quite simple — whether the term "private school" as used in the foregoing section is too vague to be understood by ordinary persons.

We have recently treated this issue in *McCord v. State,* 248 Ga. 765, 766 (285 SE2d 724) (1982), relying therein upon well-established principles of interpretation. " 'It is a general principle of statutory law that a statute must be definite and certain in its provisions to be valid, and when it is so vague and indefinite that men of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law. [Cit.]' *City of Atlanta v. Southern R. Co.,* 213 Ga. 736, 738 (101 SE2d 707) (1958)." In *McCord,* we held that the term "any immoral or indecent act" was not so vague as to violate the requirement.

Can it now be said, that the term "private school" must fail for

vagueness?

I think not.

First, compulsory education, carrying with it criminal sanctions, has been a part of the law of Georgia since 1916.

Second, the public wisdom of requiring that parents enroll their children in an adequate educational institution is now beyond quarrel. "The child at the will of the parent could be allowed to grow up in ignorance and become a more than useless member of society; and for this great wrong brought about by the neglect of his parents the common law provided no remedy." *Board of Education v. Purse,* 101 Ga. 422, 429 (28 SE2d 896) (1897), as quoted in *Bateman v. Bateman,* 224 Ga. 20, 25 (159 SE2d 387) (1968).

Third, the compulsory attendance law has been upheld, indirectly, in *Anderson v. State,* 84 Ga. App. 259 (65 SE2d 848) (1951). There, the Court of Appeals affirmed the conviction of a father who, while offering to send his child to school, refused to permit the child's vaccination. Rejecting the father's contention that he was, indeed, in compliance by sending the child to school, even though refusing to permit the child's immunization, the court observed: "Such a contention is unsound for the reason that an offer to do a thing only upon waiver of the conditions precedent thereto amounts to no offer at all." 84 Ga. App. at 265.

Finally, we have recently held that the word "school" is capable of interpretation, relying upon the dictionary definition of school as " '[a]n organized source of education or training: as (1) an institution for the teaching of children.' " *Risser v. City of Thomasville,* 248 Ga. 866 (286 SE2d 727) (1982). "The cases dealing with compulsory education statutes are not applicable here. The cases and statutes cited, *including Georgia's compulsory education statute,* do not use the word 'school' in its ordinary everyday sense. They subject the word 'school' to obvious words of limitation, so that the statute only applies to the public and private schools attended by children in a particular age bracket, such as ages seven to sixteen in Georgia." (Emphasis supplied.) 248 Ga. at 867.

In order to resolve this issue in total accord with the established longevity of compulsory education, with the precedents in our state law, and with what is one of the highest of all authorities — common sense — we need only inquire as to whether or not the activities provided by the Roemhilds met the dictionary definition of school as "an organized source of education or training: as (1) an institution for the teaching of children."

We, with the trial court below, should have no difficulty in coming easily to the conclusion that the efforts of the Roemhilds, however well-intentioned, fall far below the common understanding

of "an organized source for education or training: as (1) an institution for the teaching of children."

We should not destroy the Compulsory Education Act because the statutory term "private school" is not defined with all of the exceptions, exclusions, reservations, and provisos exemplifying the regulation-writing genius of a federal bureaucracy.·