Wayne BURROW *v.* STATE of Arkansas

CR 83-162                     669 S.W.2d 441

Supreme Court of Arkansas
Opinion delivered May 21, 1984

*C. P. Christian,* for appellant.

*John W. Whitehead; Ware, Parker, Johnson, Cook & Dunlevie,* by: *Wendell R. Bird;* and *Richard W. Summers,* for amicus curiae The Rutherford Institute, The Rutherford Institute of Georgia Legal Defense Foundation, and Christian Home Education Association.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant, Wayne Burrow, was charged with refusing to send a minor to school, in violation of Ark. Stat. Ann. § 80-1502 (Repl. 1980):

> Every parent, guardian, or other person residing within the State of Arkansas and having in custody or charge any child or children between the ages of seven [7] and fifteen [15], (both inclusive) shall send such child or children to a public, private, or parochial school under such penalty for noncompliance with this section as hereinafter provided.

Appellant had notified authorities that he was educating his daughter at home using curriculum supplied by a correspondence school. Prior to being charged, he received notice of noncompliance and was given five days to comply. Appellant was found guilty in Pulaski Municipal Court and the case was then heard in Pulaski County Circuit Court where he was again convicted and fined $1,000. Appellant presents three points for reversal: 1) the statute is void for vagueness; 2) the statute violates the free exercise clause of the Constitution; 3) the trial court erred in finding that § 80-4302 gives the state the power to approve private schools.

Appellant urges us to find the statute unconstitutionally vague. He argues that our law requires attendance of children at a "public, private or parochial school" but fails to give any definition of what constitues school and, therefore, does not provide fair notice of the conduct that is prohibited. We recognize that compulsory school

attendance laws similar to ours have been struck down on this ground in two recent cases: *Roemhild* v. *State*, 251 Ga. 569, 308 S.E.2d 154 (1983); *State* v. *Popanz*, 112 Wis.2d 166, 332 N.W.2d 750 (1983), however, we decline at this point to consider the question as we think the appellant lacks standing to raise that issue on the facts of this case.

It is an accepted principle that when challenging the constitutionality of a statute on the ground of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning. If, by his action, that individual *clearly* falls within the conduct proscribed by the statute he cannot be heard to complain. See 16A Am. Jur. 2d, § 461; L. Tribe, American Constitutional Law § 12-28 (1978); and see *Winters* v. *Beck*, 281 F. Supp. 793 (E.D. Ark. 1968). We stated the traditional standard for determining vagueness in *Jordan* v. *State*, 274 Ark. 572, 626 S.W.2d 947 (1982): "Where a man of average intelligence would not have to speculate as to the meaning of the statute the constitutional requirement of specificity is met, since fair warning of the proscribed conduct is given."

Our statute states that parents are to "send" their children to a "public, private or parochial school." The common understanding of this phrase connotes an *institution* to which a child is sent and even the appellant's expert witnesses testified that the common conception of these terms was consistent with schools in the institutional sense. We think someone of average intelligence would readily recognize that appellant's educational methods do not constitute a school within the common understanding of the word. The program he devised consisted of a single student, his own child; instruction was held in his own home; there is no indication that appellant wanted to open a school, as that term is popularly understood, or that his purpose went beyond anything other than educating his own child at home. There were no certified teachers conducting classes, only appellant and his wife acting as instructors, neither of whom held a college degree; the instruction was done for the most part through a correspondence course, evidently unapproved by the State. Under these circumstances, the language of the statute was clear

enough to appellant to put him on adequate notice that a course of home study would not constitute a school within the meaning of the statute.

Appellant's second contention is also without merit. He submits the statute is in violation of his First Amendment right to the free exercise of his religion. He relies primarily on the balancing test laid out in *Wisconsin* v. *Yoder*, 406 U.S. 205 (1972). However, the circumstances of the case before us plainly lack the exceptional considerations that were present in *Yoder*. There, the defendants, who were Amish, demonstrated distinct religious beliefs and practices supported by three centuries of tradition as an identifiable religious sect with pronounced cultural overtones, and that compulsory attendance would have damaging consequences on those longstanding traditions. In balancing the interests, the court determined that the state objectives were not seriously impeded by the Amish educational system. In contrast, the appellant, while doubtless sincere, was able to make no showing of a religious or cultural tradition comparable to that in *Yoder*, nor that similarly serious harm would result to the practices of a distinct group. Of course, appellant is free to send his daughter to a parochial school for a religiously oriented education, as he had previously done.

Appellant's third point was not raised in the trial court and will not be considered. *Moss* v. *State*, 280 Ark. 27, 655 S.W.2d 375 (1983).

Finding no error, we affirm the judgment.

PURTLE and HOLLINGSWORTH, JJ., concur.

ADKISSON, C.J., and HICKMAN, J., dissent.

JOHN I. PURTLE, Justice, concurring. The appellant was found guilty of not sending his child to a "public, private, or parochial school." The child was in fact being taught at home with materials from a correspondence school. The argument was that the appellant had the right to give his child a "religious education." No member of this court is of

the opinion that a parent does not have the right to give his child a religious education in the home. Nothing in the opinion even remotely suggests that parents are not free to educate their children in a religious manner. I think the opinion simply says that keeping a child out of any type of organized school is a violation of the statute requiring parents to send their children to a "public, private, or parochial school."

P. A. HOLLINGSWORTH, Justice, concurring. Appellant contends that he is exempt from the penalties of the state's compulsory education laws because his child is instructed at home on the basis of sincerely held religious beliefs. The majority does not address this question precisely, but I think it should be addressed because this Court has not previously considered this issue.

The free exercise clause of the first amendment is an absolute prohibition against governmental regulation of religious beliefs and provides substantial protection for lawful conduct grounded in religious belief. *Wisconsin v. Yoder,* 406 U.S. 205 (1972); *Sherbert v. Verner,* 374 U.S. 398 (1963). "Not all burdens on religion are unconstitutional and there are instances where the state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." *United States v. Lee,* 455 U.S. 252, 257-258 (1982) (citation omitted). Enforcement of the statutes in this instance will prohibit the parents from educating their children only at home but will not prevent them from observing their religious tenets. They must send their children to school but can still teach them at home.

DARRELL HICKMAN, Justice, dissenting. The court has simply avoided the issues in this case by ignoring the guiding principles of law which we apply in criminal cases, passing over decisions in point from other states and, in my judgment, has put its power to ill use simply to punish noncomformity. If Burrow has no standing to raise the question of what a private school is in Arkansas, no one has. He has been convicted of a crime for not sending his child to a school — in this case a private school. He notified the

department of education that he was going to educate his child at home and was given nothing but an opinion by the director that such a practice was not recognized as a private school. The reason for the opinion, of course, is there is *no* law, rule or regulation defining a private school in Arkansas. Private schools may operate without any regulation by the state whatsoever if they are not accredited, and there is no requirement that they be accredited. Burrow was asked at the trial if he had a license and he replied, no. There is no such license in Arkansas. There are statutes that any school must comply with, such as displaying the United States flag and teaching American history. Ark. Stat. Ann. §§ 80-1604, 80-1613 (Repl. 1980). The basic language of the school must be English; violation is a misdemeanor. Ark. Stat. Ann. § 80-1605 (Repl. 1980). None of these statutes are relevant because the only question is whether Burrow is guilty of a crime because he did not send his child to school in violation of Ark. Stat. Ann. § 80-1502 (Repl. 1980). Neither this statute, nor any other, defines private school. In Arkansas anyone can open or conduct a private school under, I suppose, any circumstances. There are dozens of such schools in Arkansas; perhaps the state should regulate this field, but it has not and that fact cannot be avoided.

In Wisconsin and Georgia, which have the same type of compulsory attendance statutes with equal voids in the definition of private schools, the highest courts have struck down the *criminal* statutes as void for vagueness. *Roemhild* v. *State,* 251 Ga. 569, 308 S.W.2d 154 (1983); *State* v. *Popanz,* 332 N.W.2d 750 (Wis. 1983). As in *Popanz,* the Arkansas statute is "singularly silent on the question of what constitutes a private school." Just as those courts in *Roemhild* and *Popanz* asked, I ask how the Arkansas statute can be said to give sufficient notice to Burrow of what he needed to do to obey the law in sending his child to a "private school." Neither do I agree with the majority that someone of average intelligence would recognize that the Burrows' efforts do not constitute a "school" within the meaning of the statute. The court in *Roemhild* v. *State, supra,* answered this very question:

[T]he state argues that the phrase "private school" is

one a person of ordinary intelligence would understand to mean an institution for the education of children which receives its funds from private sources. We, along with the Supreme Court of Wisconsin, are not convinced that this is the only definition which a person of ordinary intelligence could deduce. *State* v. *Popanz*, 332 N.W.2d at 755.

Although we agree that the word "school" clearly puts one on notice that an organized education must be provided to the child, there are many questions concerning the scope, nature, and place of the education which are left unanswered by the statute or applicable authorities. A sampling of these questions follows: Must the place of education be an 'institution' which many children attend and which has an influx of new students and outflux of graduating students every year, or may parents teach or have their children taught at home? Must the "school" provide for the yearly sequential advancement of students or may students proceed at their own pace? What facilities, such as libraries, classrooms, or playing fields must the "school" provide? What must be the educational background of the teachers — must they be state certified or may 'qualified' persons teach? What kind of curriculum and educational materials must be provided — must they rigidly compare to public schools or can a 'private school' vary their nature? And, finally, must the time schedule of a 'private school' be consistent with that of a public school?

In *Popanz* the Court was confronted with exactly the question before us:

The defendant argues that sec. 118-15(1)(a) is defective because neither the statute itself nor other statutes nor administrative regulations or rules define the phrase 'private school.' He asserts that anyone consulting the statute book, the regulations, rules, or other official writing of the Department of Public Instruction or the local school district to determine

what constitutes a private school would be confounded.

\* \* \* \*

Like this defendant, we have searched the statutes, administrative rules and regulations and official Department of Public Instruction writings for a definition of 'private school' or criteria which an entity must meet to be classified as a 'private school' for purposes of sec. 118-15(1)(a). We have found neither a definition nor prescribed criteria. Nor does the phrase 'private school' have a well-settled meaning in common parlance or in decisions of this court which could be used for purposes of applying sec. 118.15(1)(a). We therefore decline to adopt the definition of 'private school' proposed by the court of appeals or by the State Superintendent of Public Instruction in a *amicus* brief.

\* \* \* \*

*. . . In any event the legislature or its delegated agent should define the phrase 'private school'; citizens or the courts should not have to guess at its meaning.* Since there is no definition of 'private school,' as that term is used in sec. 118.15(1)(a), the determination of what constitutes a 'private school' apparently rests solely in the discretion of the school attendance officer of the district.

\* \* \* \*

The lack of definition of 'private school' delegates the basic policy matter, the determination of whether or not children are attending a private school, to local school officials whose decisions may rest on *ad hoc* and subjective standards. Sec. 118.15(1)(a) thus poses the danger of arbitrary and discriminatory enforcement, contrary to the basic values underlying the principles of due process. See *Grayned* v. *City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972).

The persons who must obey the law should not have to guess at what the phrase 'private school' means. They should have some objective standards to guide them in their attempts to 'steer between lawful and unlawful conduct.' *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Furthermore, standards cannot lie only in the minds of persons whose duty it is to enforce the laws. We must conclude that the statute fails to provide fair notice to those who would seek to obey it and also lacks sufficient standards for proper enforcement. (Italics supplied.)

The majority emphasizes that the statute says "send," meaning, I presume, next door or across the street — not down the hall or out back. Why such a presumption? The majority also opines the statute means a school is an "institution." What is an institution — one person or a dozen persons? Why don't we require the legislature to define private school before we convict people of violating an undefined non-existent crime?

The United States constitution does not mention education. Arkansas' constitution only mentions a free public education, which is a desirable endeavor of any society. But for years, all education was private. That was the rule not the exception. Unless the state can define and justify regulations for private schools by law, it should not convict its citizens of a crime for trying to provide the kind of education they deem fit and necessary for their child.

In *State v. Bryant,* 219 Ark. 313, 241 S.W.2d 473 (1951), we quoted with approval:

We cannot conceive how a crime can, on any sound principle, be defined in so vague a fashion. Criminality depends under it, upon the moral idiosyncrasies of the individuals who compose the court and jury. The standard of crime would be ever varying, and the courts would constantly be appealed to as the instruments of moral reform, changing with all fluctuations of moral sentiment. The law is simply

null. The constitution, which forbids *ex post facto* laws, could not tolerate a law which would make an act a crime, or not, according to the moral sentiment which might happen to prevail with the judge and jury after the act had been committed.

In my judgment Burrow loses because he refuses to conform, thereby threatening the power of the political establishment, and not because he committed a crime. The state has the power to punish this man, but it doesn't have the right.