STATE of Wisconsin, Plaintiff-Respondent,

v.

Laurence POPANZ, Defendant-Appellant.

Supreme Court

No. 81–1493–CR.  Submitted on briefs March 2, 1983.—
Decided April 26, 1983.

(Also reported in 332 N.W.2d 750.)

For the defendant-appellant the cause was submitted on the briefs of *Michael Yovovich*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Paul R. McLimans*, Iowa County District Attorney.

Amicus Curiae brief was filed by *Raymond W. Dunne*, legal counsel, Department of Public Instruction, and *Daniel D. Stier*, assistant attorney general, with whom

on the brief was *Bronson C. La Follette,* attorney general, for State Superintendent of Public Instruction.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of conviction of the circuit court for Iowa county, James P. Fiedler, Circuit Judge. The circuit court adjudged Laurence C. Popanz guilty on two counts of violating Wisconsin's compulsory school attendance law, sec. 118.15(1)(a), Stats. 1981–82. Sec. 118.15(1)(a), requires a person having control of a child who is between the ages of 6 and 18 years to cause the child to attend public or private school regularly.[1] Violation of the statute constitutes a misdemeanor. Sec. 118.15(5).[2] This court granted direct review of the judgment upon certification of the court of appeals. Secs. 808.05(2), 809.61.

The issue presented on certification is whether the phrase "private school" as used in sec. 118.15(1)(a) is impermissibly vague and sec. 118.15(1)(a) as applied to

[1] Sec. 118.15(1)(a), Stats. 1981–82, provides, in relevant part:
"118.15. **Compulsory school attendance.**
"(1)(a) . . . [A]ny person having under control a child who is between the ages of 6 and 18 years shall cause the child to attend *school* regularly during the full period and hours, religious holidays excepted, that the *public or private school* in which the child should be enrolled is in session until the end of the school term, quarter or semester of the school year in which the child becomes 18 years of age." (Emphasis added.)

[2] Sec. 118.15(5), Stats. 1981–82, provides:
"(5) Whoever violates this section may be fined not less than $5 nor more than $50 or imprisoned not more than 3 months or both, after evidence has been provided by the school attendance officer that the activities under s. 118.16(5) have been completed. In a prosecution under this subsection, if the defendant proves that he or she is unable to comply with the law because of the disobedience of the child, the action shall be dismissed, and the child shall be referred to the court assigned to exercise jurisdiction under ch. 48."

prosecutions involving "private schools" violates the fourteenth amendment to the United States Constitution and art. I, sec. 8, of the Wisconsin constitution.[3] For the reasons we set forth we conclude that the phrase "private school" as used in sec. 118.15(1)(a) is impermissibly vague and that sec. 118.15(1)(a) as applied to prosecutions involving private schools is unconstitutional. Accordingly we reverse the judgment of conviction and remand the cause to the circuit court with directions to dismiss the complaint.

The facts leading up to the conviction and the trial testimony can be stated briefly. In August of 1980, the defendant, Laurence C. Popanz, wrote to inform the district school administrator that he was a member of the Agency for the Church of the Free Thinker Inc., a Wisconsin corporation organized under ch. 181 of the Wisconsin Statutes, that the church administers "the Free Thinker School, a private school located in Avoca, Wisconsin," and that three of the students enrolled in the Free Thinker School had previously been enrolled in the district's public schools. All three students were the defendant's daughters. The charges in this case concern two of the defendant's daughters who attended the Free Thinker School.[4] The defendant requested the children's school records along with recommendations regarding curriculum and asked the district school administrator to inform the school attendance officer about the matter "so

[3] The court of appeals certified two questions to this court. The second question is: Who has the burden of proof to establish that children are or are not attending a "private school"? Two panels of the court of appeals expressed different views on this issue. Compare *State v. White*, 109 Wis. 2d 64, 69 n. 3, 325 N.W.2d 76 (Ct. App. 1982), and *State v. Kasuboski*, 87 Wis. 2d 407, 413, 418, 275 N.W.2d 101 (Ct. App. 1978). Because we vacate the conviction on other grounds, we need not reach this question.

[4] One of the defendant's daughters had been enrolled in a public elementary school and the other in a public high school.

that we can be informed of anything we must do to be in compliance with the law."

The defendant's letter initiated a series of communications between the defendant and the district school administrator relating to listing nonpublic schools in a Wisconsin Department of Public Instruction publication entitled "Wisconsin Nonpublic School Directory." The district school administrator testified that before he would recognize the defendant's school as a "private school" for purposes of the compulsory school attendance law, he would require that the defendant's school be listed in the directory, even though there is no such requirement in the statutes or administrative regulations. The administrator testified that the listing requirement was a matter of his own "professional" standards.

The Chief of Information Services for the Department of Public Instruction, who is in charge of compiling the Wisconsin Nonpublic School Directory, testified that each district school administrator compiles the list of nonpublic schools in his or her district. In response to questioning seeking to ascertain whether the witness determined that the private schools adhered to any type of prescribed guidelines, he answered as follows:

"I do not. I collect the information and handle data. We do have a nonpublic school liaison person, Dr. Mildred Anderson, who counsels nonpublic schools, but I do not get involved in that and I'm sure there really are no official guidelines for nonpublic schools in the statutes."

The administrator testified that he personally needed to evaluate the schools to ensure that they comported with certain standards of which someone at the Department of Public Instruction had advised him orally, when the district administrator had consulted that person about another claimed private school. The standards the administrator claimed to use, or the questions he would ask, were as follows: Does the curriculum of the school

provide sequential advancement of students? What are the facilities available? What are the educational backgrounds of the teachers? Are the instructional materials adequate? Is the time schedule consistent with that followed by the public schools? The administrator never asked these questions about the defendant's school because he never visited the school.

The defendant apparently took the position that he had made it clear to the administrator that his school was a private school because it complied with all of the Department of Public Instruction's requirements of which he had been advised; that if the district school administrator needed additional information to satisfy the administrator that the school was a private school, the defendant would supply the information on request; that if the administrator required a visit to the school, the administrator should so advise the defendant; and that the administrator had requested neither additional information nor a visit.

The circuit court concluded that the administrator of the school district had advised the defendant that when his school was ready for evaluation, the defendant should contact the administrator and that the administrator and a representative of the Department of Public Instruction would then visit the school to allow the administrator to evaluate the school. The circuit court further concluded that the defendant ignored the administrator's suggestion to request a personal visit in order to be listed in the directory, concluding that the defendant was involved in a "word contest" with the district school administrator.

In any event, neither the defendant nor the district school administrator requested that the defendant's school be visited to ascertain whether it could be characterized as a private school under sec. 118.15(1)(a). Because the defendant failed to request an evaluation,

the administrator and the two school principals involved proceeded to comply with the statutory prerequisites to the institution of proceedings, sec. 118.16 (5), Stats. 1981–82.[5] They then requested the district attorney for Iowa county to institute proceedings against the defendant pursuant to sec. 118.15 (1) (a) 5.

Even though the circuit court concluded that for the purposes of the compulsory school attendance law "the Wisconsin Statutes are singularly silent on the question of what constitutes a private school," it did not consider the constitutionality of the statute.[6] The circuit court

[5] Sec. 118.16 (5), Stats. 1981–82, provides:

"(5) Prior to any proceeding being brought against a child under s. 48.13 (6) or against the child's parent or guardian under s. 118.15, the school attendance officer shall provide evidence that appropriate school personnel in the school or school district in which the child is enrolled have, within the school year during which the truancy occurred:

"(a) Met with the child's parent or guardian to discuss the child's truancy or have attempted to meet with the child's parent or guardian and been refused.

"(b) Provided an opportunity for educational counseling to the child to determine whether a change in the child's curriculum would resolve the child's truancy and have considered curriculum modifications under s. 118.15 (1) (d).

"(c) Evaluated the child to determine whether learning problems may be a cause of the child's truancy and, if so, have taken steps to overcome the learning problems.

"(d) Conducted an evaluation to determine whether social problems may be a cause of the child's truancy and, if so, have taken appropriate action or made appropriate referrals."

The district school administrator was the district school attendance officer; he delegated some of his authority to the elementary and high school principals. Sec. 118.16 (1) (a), Stats. 1981–82, defines "school attendance officer" as "an employe designated by the school board to deal with matters relating to school attendance and truancy."

[6] Although the constitutional issue was not raised in the circuit court, we have, in granting direct review on certification, exercised our discretion to consider the issue because there are no

found the defendant guilty because he failed to establish that he had caused his daughters to attend a private school. He was sentenced to two consecutive 90-day terms.

The defendant maintains on appeal that sec. 118.15(1)(a) is void for vagueness. The state reminds us that there is a strong presumption favoring the constitutionality of a legislative enactment[7] and that the court will construe the statute to preserve it if it is at all possible to do so. *State ex rel. Ft. Howard Paper v. Lake Dist. Board,* 82 Wis. 2d 491, 505, 263 N.W.2d 178 (1978).

There is no simple litmus-paper test to determine whether a criminal statute is void for vagueness. The principles underlying the void for vagueness doctrine, as we explained in *State v. Courtney,* 74 Wis. 2d 705, 709, 247 N.W.2d 714 (1976), stem from concepts of procedural due process. Due process requires that the law set forth fair notice of the conduct prohibited or required and proper standards for enforcement of the law and adjudication.[8] Before a court can invalidate a statute on the grounds of vagueness, it must conclude that "some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited" appears in the statutes, "such that one bent on obedience may not discern when the region of proscribed conduct is neared, or

factual issues that need resolution. Both parties here had an opportunity to brief the issue and determination of the issue is in the interests of justice, *Laufenberg v. Cosmetology Examining Board,* 87 Wis. 2d 175, 187, 274 N.W.2d 618 (1979).

[7] *Wis. Bingo Sup. & Equip. Co. v. Bingo Control Bd.,* 88 Wis. 2d 293, 301, 276 N.W.2d 716 (1979).

[8] *Milwaukee v. Wilson,* 96 Wis. 2d 11, 16, 291 N.W.2d 452 (1980); *State v. Ehlenfeldt,* 94 Wis. 2d 347, 355, 288 N.W.2d 786 (1980); *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976); *Butala v. State,* 71 Wis. 2d 569, 573, 239 N.W.2d 32 (1976); *State v. Zwicker,* 41 Wis. 2d 497, 507, 164 N.W.2d 512 (1968) LaFave and Scott, *Criminal Law,* sec. 11 (1972).

such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the statute or rule." *State v. Courtney, supra,* 74 Wis. 2d at 711.

A criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of conduct required or prohibited. "Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972).

A criminal statute must also provide standards for those who enforce the laws and those who adjudicate guilt. A statute should be sufficiently definite to allow law enforcement officers, judges, and juries to apply the terms of the law objectively to a defendant's conduct in order to determine guilt withuot having to create or apply their own standards. *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714 (1976). The danger posed by a vague law is that officials charged with enforcing the law may apply it arbitrarily or the law may be so unclear that a trial court cannot properly instruct the jury as to the applicable law. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972).

This court must therefore address the defendant's dual concerns: first, that the use of the phrase "private school" in sec. 118.15 (1) (a) does not give a person bent on obedience fair notice of how to comply with the statute; and second, that sec. 118.15 (1) (a) does not provide sufficient standards such that those who enforce the

law will not be relegated to creating and applying their own standards.

The defendant argues that sec. 118.15(1)(a) is defective because neither the statute itself nor other statutes nor administrative regulations or rules define the phrase "private school." He asserts that anyone consulting the statute book, the regulations, rules, or other official writing of the Department of Public Instruction or the local school district to determine what constitutes a private school would be confounded.

Like this defendant, we have searched the statutes, administrative rules and regulations and official Department of Public Instruction writings for a definition of "private school" or criteria which an entity must meet to be classified as a "private school" for purposes of sec. 118.15(1)(a). We have found neither a definition nor prescribed criteria. Nor does the phrase "private school" have a well-settled meaning in common parlance or in decisions of this court which could be used for purposes of applying sec. 118.15(1)(a). We therefore decline to adopt the definition of "private school" proposed by the court of appeals or by the State Superintendent of Public Instruction in an *amicus* brief.

In *State v. White,* 109 Wis. 2d 64, 74, 325 N.W.2d 76 (Ct. App. 1982), the court of appeals, combining a dictionary definition of "school" with language from various statutes that use the term "private school,"[9] interpreted the phrase "private school" in sec. 118.15(1)(a) as "an institution that meets prescribed curriculum and

[9] The phrase "private school" appears in several statutes. *See, e.g.,* secs. 115.28(7)(b); 118.01(9) and (10); 118.07; 118.08; 118.09; 118.16(3); 143.16, Stats. 1981–82. Sec. 121.51(3), Stats. 1981–82, defines a "private school" for the purposes of subchapter IV of chapter 121 relating to transportation aid as "any parochial or private elementary or high school in this state offering any academic grades comparable to those described in s. 115.01(2), including kindergarten."

organizational requirements and that has any academic grade comparable to one included in the standard public school grade division."

The State Superintendent of Public Instruction, reading the statutes, court decisions, and dictionary definition of school together, proposed in an amicus brief that the phrase "private school" be defined as follows:

"[A] private school is a facility offering the various grade levels available in the public schools, and commonly understood by the public to be a 'school.' The commonly understood definition of 'school' is '[a]n institution for the instruction of children.' *The American Heritage Dictionary* 1162 (New College Edition 1980).

" . . .

"Thus, a private school is an educational *institution*. It is established for the primary purpose of providing instruction in the applicable grade levels, and its existence is continuing or perpetual rather than limited in duration to only the educational careers of specific persons now receiving instruction. In other words, particular students may come and go but the *bona fide* private school continues to hold its doors open to new students who will take the place of those who graduate or otherwise leave the school. . . ."

We are not convinced that these definitions are the only ones a citizen, an administrator, or a court using dictionary definitions, court decisions and the statutes could deduce. In any event the legislature or its delegated agent should define the phrase "private school"; citizens or the courts should not have to guess at its meaning.

Since there is no definition of "private school," as that term is used in sec. 118.15(1)(a), the determination of what constitutes a "private school" apparently rests solely in the discretion of the school attendance officer of the district. *See* Department of Public Instruction Newsletter, "Legal Corner," November 1975, introduced as an exhibit. The record shows that in this school district a person seeking to comply with sec. 118.-

15 (1) (a) apparently must consult the district school administrator to find out what that administrator considers a "private school" and must comply with the procedure set forth by that particular administrator to have a school classified as a private school. *See* Department of Public Instruction Newsletter, "Legal Corner," undated, introduced as an exhibit. In this case the district school administrator had no written criteria for a private school and had not set forth a procedure which he followed to rule on an application to be considered a private school. Even if one could ascertain the district's criteria, those criteria, consisting of vague questions the administrator would ask, are not helpful to one seeking to comply with the law.

The lack of definition of "private school" delegates the basic policy matter, the determination of whether or not children are attending a private school, to local school officials whose decisions may rest on *ad hoc* and subjective standards. Sec. 118.15(1) (a) thus poses the danger of arbitrary and discriminatory enforcement, contrary to the basic values underlying the principles of due process. *See Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972).

The persons who must obey the law should not have to guess at what the phrase "private school" means. They should have some objective standards to guide them in their attempts to "steer between lawful and unlawful conduct." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). Furthermore, standards cannot lie only in the minds of persons whose duty it is to enforce the laws. We must conclude that the statute fails to provide fair notice to those who would seek to obey it and also lacks sufficient standards for proper enforcement.

The Department of Public Instruction, recognizing that there are no standards for determining what con-

stitutes a "private school" under sec. 118.15(1)(a), suggests that the school attendance officer file a charge under that section if he or she "felt the attendance was not at a 'private school,'" leaving the final determination of what constitutes a "private school" to the courts. Department of Public Instruction Newsletter, "Legal Corner," undated, introduced as an exhibit. We do not think that sec. 118.15(1)(a) or any other statutes or any rules equip the courts to define "private school" or to instruct a jury on what constitutes a private school. Defining the contours of laws subjecting a violator to criminal penalty is a legislative, not a judicial, function. Secs. 939.10 and 939.12, Stats. 1981–82; *State v. Baldwin,* 101 Wis. 2d 441, 447, 304 N.W.2d 742 (1981). The legislature, not the courts, should clarify sec. 118.15(1)(a).

We hold that sec. 118.15(1)(a) is void for vagueness insofar as it fails to define "private school." The court of appeals' decision in *State v. White,* 109 Wis. 2d 64, 325 N.W.2d 26 (Ct. App. 1982), that a person of ordinary intelligence need not guess that statute's meaning and that the statute is sufficiently definite is hereby overruled. See also *State v. White,* 112 Wis. 2d 178, 332 N.W.2d 756 (1983). We reverse the judgment and remand the cause to the circuit court to dismiss the complaint.

*By the Court.*—Judgment of the circuit court reversed; cause remanded with directions to dismiss the complaint.