472 So.2d 1228 (1985)
STATE of Florida, Appellant,
v.
Mark BUCKNER, Fred Senczyszyn and Lenora Senczyszyn, Appellees.
No. 84-2713.
District Court of Appeal of Florida, Second District.
June 19, 1985.
Rehearing Denied July 25, 1985.
*1229 Jim Smith, Atty. Gen., Tallahassee, and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellant.
Russell K. Peavyhouse of Peavyhouse, Grant, Clark, Charlton, Opp & Martino, Tampa, for appellee Buckner.
Allen M. Blake of Allen M. Blake, P.A., Tampa, for appellees Senczyszyn.
FRANK, Judge.
We reverse the order of the trial court. There is no constitutional infirmity in section 232.02, Florida Statutes. That statute plainly sets out the means by which regular school attendance is to be achieved.
The trial court found section 232.02 so impermissibly vague that the appellees, who were accused of failing to insure their children's regular attendance at school, could not know whether their conduct subjected them to criminal liability. The appellees' contention is unsupported by a rational reading of the statute in its entirety. One must bear in mind that the title to Chapter 232 is "Compulsory School Attendance: Child Welfare." With its basic premise that the paramount concern subtending the Legislature's enactment of school attendance regulations is the best interest of the children of our state, this essentially unambiguous statute crystallizes into a clear proscription against certain kinds of conduct aimed at evading the statutory mandate.
Our starting point is the vagueness test formulated in Reynolds v. State:
The test of vagueness of a statute is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and purpose. The statute must give reasonable notice that a person's conduct is restricted by the statute. 383 So.2d 228 at 229 (Fla. 1980).
The Reynolds test requires that we infuse the meaning of any statute with our "common understanding and purpose." Obviously, if we demanded precise definition of every statutory word to shield against the void for vagueness doctrine our codified laws would fill endless shelves and the result would be obfuscation rather than clarification of our organic law. Instead, in the absence of a statutory definition, we shall assume the common or ordinary meaning of a word. State v. Little, 400 So.2d 197, 198 (Fla. 5th DCA 1981). Section 232.02, when read in all of its parts and attributing to each subpart its common meaning, is not unconstitutionally vague.
The statute provides that a child's regular school attendance may be achieved at any one of four facilities:
(1) a public school supported by public funds.
(2) a parochial or denominational school;
(3) a private school supported in whole or in part by tuition charges or by endowments or gifts; and
(4) at home with a private tutor who meets all requirements prescribed by law and regulations of the state board for private tutors. § 232.02, Fla. Stat.
The statute becomes vague only if one fails to attribute the common, ordinary meaning to certain key words: "school" and "home." As to the word "school," the pertinent statutes provide some guidance. Section 228.041(5), Florida Statutes, provides: "A school is an organization of pupils for instructional purposes on an elementary, secondary, or other public school level ..." Our common understanding is that a school is an organization of pupils who come together at an institution for learning. The school may be supported by *1230 public, church, or private funds. (Hence, subparts (1), (2), and (3) of section 232.02). Although we hope that children are enriched by and learn from their home environments, the common meaning of "home" neither contemplates nor encompasses an organization of pupils as an institution for learning. Thus, when a child is instructed "at home," in a circumstance, for example, where he or she suffers from a physical impairment that precludes leaving the home, the Legislature has required that the instruction be provided by a certified tutor. A home is a private place, not accessible to the public, and to insure that a somewhat sequestered child receives quality education, the Legislature has enacted the certified tutor requirement.
The Legislature's intent behind the home tutor requirement is clear  to insure the child's welfare. Therefore, although in some exceptional circumstances a child may live at a place on which a private school is located and where instruction is undertaken for an organization of pupils, the statute clearly prohibits an unqualified parent from teaching a child at home under the guise that a private school has been established. Indeed, as is stated in State v. M.M. and S.E., 407 So.2d 987 (Fla. 4th DCA 1981),
[t]his is so for the reason that the Legislature, in Section 232.02, clearly intended to distinguish between private schools on the one hand and home instruction by a private tutor on the other. If "private school," as that term is used in Section 232.02(4). People v. Turner, 121 Cal. App.2d Supp. 861, 263 P.2d 685, 688 (1983). Since the Legislature saw fit to incorporate subsections (3) and (4) in Section 232.02, both sub-sections must be given effect in accordance with the above quoted rule of statutory construction [that the effect must be given to each subpart of a statute as well as to the statute as a whole]. 407 So.2d at 990.
Parents need not guess at the interpretation of section 232.02 to know whether or not they have complied with the requirement of insuring their child's regular attendance at school. There well may be, and probably are, as is noted above, extraordinary circumstances in which a child's home is encompassed within the confines of a private school. This would assume, for example, that the primary purpose of the physical plant is for instruction of pupils and that the child resides with a parent in an adjacent apartment. Nevertheless, the child would still have a "home" that is not a "school," and his instruction could take place either at the school or at home with a certified private tutor. The bare record before us reveals that, in all likelihood, the Buckner and Senczyszyn children were being taught at home rather than at a private school.
We reverse the trial court's order and remand the case for a full determination of whether the parents had indeed established private schools or were merely attempting to evade the statutory prescriptions under the pretense that the children's home was also their school.
CAMPBELL, A.C.J., concurs.
LEHAN, J., dissents with opinion.
LEHAN, Judge, dissenting.

Basic Reasons for this Dissent
I dissent. I would affirm and would hold that the relevant statutes are unconstitutionally vague. The strongly held views as to the application of the law which are expressed in this dissenting opinion do not at all detract in any way from the great respect in which I hold the majority. I simply feel the majority opinion in these cases is mistaken in failing to apply established principles of law and thereby works injustices which would be compounded in any future, similar cases.
In my view the majority opinion is incorrect in at least two basic respects: (1) in appearing to place the unquestionably important educational interests of children, in their receipt of what may be perceived to be proper types of schooling, paramount over the constitutional due process interests of citizens, especially the parents who are defendants in these criminal prosecutions; *1231 and (2) by engaging the courts in the creation of law in an area which I believe is unquestionably legislative.
The majority opinion directs the trial court on remand to determine whether the parents in these cases had established private schools. Therefore, on remand the trial court is to be faced with the same problem which caused the Georgia and Wisconsin Supreme Courts, in cases which this dissenting opinion discusses, to declare the compulsory school attendance statutes in those states unconstitutional: the problem of determining without statutory criteria what is a "private school." In so doing, the trial court, in my view, will be improperly creating judicial legislation, as would this court on any subsequent appeal from the trial court's determination in that respect.
The Florida legislature has itself shown the legislative nature of the subject matter of this suit. The legislature has not simply failed to spell out what it is that parents in situations like those in this case may and may not do, but also, as discussed in this dissenting opinion, the legislature in 1969 repealed, and did not replace, private schooling statutes designed to address the type of problem at hand by establishing standards for private schools. It is the task of filling that void created by the repeal of those statutes that the majority opinion has assigned to the trial court on remand.
I certainly recognize and appreciate the difficulty faced by the legislature in this area and have no desire to be critical of the legislature which, I presume, has grappled with the problem. I simply cannot countenance parents being criminally prosecuted for failing to understand what the legislature has not expressed. What a court may perceive to be in the best educational interests of children, interests to be addressed by the legislature, should not cause parents who do not share those perceptions to be criminally convicted.
This case involves a difficult issue of constitutional law with important ramifications. This dissenting opinion undertakes to address that issue and to spell out those ramifications rather fully in a manner which it is hoped will be abundantly clear. Whereas the effect of the majority opinion is to affirmatively say that the meaning of the relevant statute is obvious, this dissent says otherwise. Therefore, this dissenting opinion must establish a negative. To do so it must explore and exclude all possible affirmative interpretations which could support the majority's apparent conclusion of obviousness which I believe is substantially unexplained. Thus, this dissenting opinion undertakes to explain why it is believed that the majority opinion's simple answer to the issue at hand is, in effect, simplistic.

Facts, Issues, Summary of Reasoning and Proposed Holding
These are two consolidated appeals from dismissals by the County Court of Hillsborough County of charges alleging that parents violated section 232.19, Florida Statutes (1983), by failing to have their children regularly attend specified public schools. The county court found that the relevant statutes are unconstitutionally vague. We have jurisdiction under Article V, section (4b)(1), Florida Constitution, and section 26.012, Florida Statutes (1983).
What type of judicial decisions this appeal does and does not concern should be emphasized. This case does not concern a decision as to what type of schooling children should receive or whether they can receive at home or in certain other nonpublic school settings what a court might feel is a proper education. That is for the legislature to determine and to express in legislation. Generally, under our constitutional system of separation of powers the legislative branch makes the laws, the executive branch enforces them, and the judicial branch interprets them and determines their constitutionality. This case does concern whether the Florida compulsory school attendance statutes give parents sufficiently clear notification of where they may and may not send their children to school so that if they don't send their children *1232 where the legislature has said they should, they may constitutionally, viz. with fairness, be criminally convicted and jailed for not doing so.
Section 232.09 provides, "Each parent of a child within the compulsory attendance age shall be responsible for such child's school attendance as required by law." Failure to fulfill that responsibility is a misdemeanor under section 232.19. Section 232.01 requires that children from ages six to sixteen regularly attend school. Section 232.02 defines regular attendance as follows:
Regular attendance within the intent of s. 232.01 may be achieved by attendance at:
(1) A public school supported by public funds;
(2) A parochial or denominational school;
(3) A private school supported in whole or in part by tuition charges or by endowments or gifts; and
(4) At home with a private tutor who meets all requirements prescribed by law and regulations of the state board for private tutors.
A private tutor must have a valid Florida teacher's certificate. Fla. Admin. Code Rule 6A-1.951.
Appellants were charged with violations of section 232.19. That section in itself is not vague. However, sections 232.19 and 232.02 are interrelated and, in order to comply with section 232.19, a person must be able to understand section 232.02. The issue here is whether section 232.02 is unconstitutionally vague. I agree with the county court that it is.
"The test of vagueness of a statute is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and purpose. The statute must give reasonable notice that a person's conduct is restricted by the statute." Reynolds v. State, 383 So.2d 228, 229 (Fla. 1980).
These appeals turn upon whether the wording of section 232.02 gave appellees reasonable notice of prohibited criminal conduct. Therefore, the detailed facts of each case are not determinative. However, I accept as agreed upon facts that appellees' children are schooled by appellees, who are not certified teachers, at their respective homes in what appellees have designated as the Victory Christian School and the Senczyszyn Christian School. I draw no conclusions from their arguments as to various asserted operational aspects of one or the other or both of those schools relative to teaching, textbooks used, types of curricula, attendance requirements, maintenance of attendance records, testing procedures, results of tests measuring their children's performance as compared to other children of comparable age and grade, filing with the state of annual data base surveys, sources of operating funds, enrollment of children in addition to appellees' children, advertising to the public, affiliation with a national educational organization, etc. Appellees' positions are that the schooling which their children receive is organized like, and is at least comparable in quality to, public schooling. However, the statute does not establish sufficient standards by which to determine whether or not operational aspects of those types would make nonpublic schools acceptable.
The statute does not contain definitions of parochial, denominational, or private schools. A school is defined in section 228.041(5) only as "an organization of pupils for instructional purposes on an elementary, secondary, or other public school level, approved under regulations of the state board." Section 228.041 states that the definitions in that section apply to the words whenever they are used in the Florida School Code. The Florida School Code is comprised of "[a]ll of the laws of Florida relating to public education... ." Section 228.001, Fla. Stat. (1983) (emphasis added).
In addition to lacking definitions, the statutes contain very few requirements for nonpublic schools which could aid in an attempt to define what qualifies as a private, parochial, or denominational school. Sections 228.041(13) and (16) define the number of hours comprising a school day *1233 and the number of hours and days comprising a school year. However, because these definitions apply to "public education," according to sections 228.001 and 228.041, it may be questionable whether they apply to nonpublic schools, although they have been interpreted by at least one circuit court to so apply. See In the Interests of M.M. and S.E., Nos. 81-2550 and 81-2552 (Fla. 17th Cir.Ct. June 30, 1981), as cited in Sherman, Alternatives to Public School: Florida's Compulsory Education Dilemma, 6 Nova L.J. 269 (1982).
A few requirements are imposed specifically on nonpublic schools. For example, section 232.021 requires public and nonpublic schools to keep certain enrollment and attendance records, and section 229.808 requires nonpublic schools to file an annual data base survey. However, there apparently are no statutes or regulations which set standards for nonpublic schools in such areas as teachers, curriculum, testing, or school facilities or equipment. In 1959 the legislature created a board of private education to establish minimum standards for nonpublic schools, see chapter 247, Florida Statutes (1959 to 1967), but that legislation was repealed in 1969 and has not been replaced by similar legislation.[1] Thus, in the absence of statutory definitions or guiding standards, the determination of whether section 232.02 is unconstitutionally vague must be with reference to little more than the words of that section itself.
There is no precise, objective legal test by which to determine whether a particular statute is or is not void for vagueness. The above-quoted test for determining whether a statute is unconstitutionally vague itself has somewhat imprecise aspects. I agree with the Wisconsin Supreme Court that there is "no simple litmus-paper test to determine whether a criminal statute is void for vagueness." State v. Popanz, 112 Wis.2d 166, 332 N.W.2d 750, 753-54 (1983). The task of a court in resolving this type of issue is to perceive what, if any, "common understanding" there is of particular statutory wording.
In arriving at a perception of the common understanding of a statute it is helpful to bear in mind the interests to be protected by the "void for vagueness" doctrine. The interests involve constitutional due process concerns. The statute in question must give (a) "fair notice of the conduct prohibited or required" and (b) "proper standards for enforcement of the law and adjudication." State v. Popanz, 332 N.W.2d at 754; Reynolds v. State, 383 So.2d at 229-30. The United States Supreme Court has described these interests as follows:
It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972). In short, the statute must provide fair notice to those bent upon compliance and must not permit arbitrary enforcement. As a practical matter, the concern with arbitrary enforcement may be the most significant in these types of cases; most parents may rely upon the enforcing authorities to tell them what the law is.
*1234 Against the foregoing background my starting point for analysis is with the presumption of constitutionality inherent in any statute. See Scullock v. State, 377 So.2d 682, 683-84 (Fla. 1979). My analysis is directed principally to subsection (3) of section 232.02 as to the words "private school." The words in each of subsections (1) and (4), which relate to public schools and private tutors at home, viewed in isolation, seem to be sufficiently susceptible of common understanding. No determinative conclusions as to the sufficiency of subsection (2) by itself need be drawn in this case. But, under the circumstances of this case as further explained below, unless a citizen has fair notice of the meanings of all of those subsections, he cannot have fair notice of the conduct meant to be approved by section 232.02 and, therefore, not criminally proscribed. Accordingly, in order for section 232.02 as a whole to be constitutional subsection (3) must be constitutional.
The general nature of the arguments by defendant and the state can be summarized as follows. Defendants contend that their children attend private schools and that private schools are approved by subsection (3) of section 232.02. The state contends that defendants' children are schooled at home without a private tutor which is disapproved by subsection (4) of that statute. Defendants rebut with the argument that private schools, which are approved under subsection (3), may be at home, at least if they are operated in a traditional manner and produce adequate basic education. The state replies that subsection (4) means that schooling at home may be only with a private tutor, regardless of whether or not that schooling could constitute a private school under subsection (3). The defendants then alternatively argue the principal issue before us: if the statute is not clear enough to support their position, it is not clear enough to support the state's position either and is therefore unconstitutionally vague.
We must, therefore, decide the issues of whether subsection (4) means what the state contends, i.e., that any at-home schooling must be with a private tutor, and whether subsection (3) means what defendants contend, i.e., that a private school, if conducted so as to produce adequate basic education may be at a student's home. I conclude that neither subsection (4) nor subsection (3) is sufficiently clear so as to provide a common understanding of the answers to those issues. As to subsection (3), I conclude that that subsection does not define what a private school is and that there can be no sufficiently understood common meaning of the term "private school" so that there could be common understanding of whether or not a private school could properly be at a student's home. Furthermore, I conclude that if a nonpublic school is operated in such a way as to provide what would be generally understood to be an adequate basic education, there is, in the absence of a clear statutory prohibition, no necessarily logical reason why it may not be conducted in a student's home. As to subsection (4), I conclude that, while that subsection says that schooling at a student's home is approved if it is conducted by a private tutor regardless of any other factor relating to education, it does not say that no other schooling at a student's home, no matter how that schooling is operated, is approved.
As I have said, the words in subsection (4) are in a sense clear enough. The principal problem comes from considering what subsection (3) means. Subsection (3) fails to define "private school," and the lack of any sufficiently clear common understanding of that term leaves a parent with no sufficiently clear understanding of what nonpublic schooling, whether or not at a student's home, qualifies as a private school and what, if any, schooling at home without a private tutor would be acceptable. I am not saying that the statute means that a private school may or may not be at a student's home. I am only saying that there can be from section 232.02 no common understanding of that, one way or the other. Therefore, that section fails the constitutional test for clarity and is void for vagueness.
*1235 The foregoing reasoning is explained as follows and divided into the following five parts into which the remainder of this dissenting opinion is organized.
(A) The Broad Meaning Approach  The relevant words are not defined by statute and have no precise, commonly understood meanings; even under very broad definitions, the words "private school" in subsection (3) do not have sufficiently understood, common meanings which would appear to be consistent with the apparent overall purpose of section 232.02;
(B) The Most Likely Meaning Approach  The most likely intended meaning of the term "private school" would generally connote some kind of organized, institutional education; however, the practical nature of that type of education is not described in subsection (3);
(C) The State v. M.M. Approach  State v. M.M., 407 So.2d 987 (Fla. 4th DCA 1981), the closest Florida case, is a truancy case and contains reasoning which would uphold the constitutionality of section 232.02(4) as applied to the defendants in this case without the necessity for considering subsection (3); under that reasoning any schooling at home must be with a private tutor; however, that reasoning may be thought of as at least of questionable application here because there is no readily apparent, significantly manifested legislative intent that at-home schooling must necessarily be by a private tutor; a statutorily approved "private school" might or might not also involve at-home schooling, but, as I have concluded in sections (A) and (B) of this opinion, the undefined statutory term "private school" as a type of approved nonpublic school has no sufficiently understood, common meaning; therefore, there is a persuasive argument against the reasoning of State v. M.M., as applied to this criminal case;
(D) This Dissent's Approach  While I recognize the persuasiveness of the M.M. reasoning, as well as other reasoning which could lead to the M.M. result, proper alternative interpretations of subsections (3) and (4) are reasonably debatable; I believe that due process concerns in the criminal prosecutions which are before us compel a conclusion that section 232.02 does not contain a sufficiently definite warning of proscribed conduct and is, therefore, unconstitutionally vague; and
(E) The Effect of the Dissent's Approach  Section 232.02, as a whole, is unconstitutional as applied to this case, but parents of children who are covered by the compulsory school attendance laws and who are provided with no schooling at all may still be prosecuted under sections 232.19 and 232.09.
Because of the importance of these cases and the difficulty of the concepts involved, this dissenting opinion undertakes to explain the above-outlined reasoning in some detail.

(A) The Broad Meaning Approach 
In light of the foregoing presumption of constitutionality, my efforts have been aimed at finding that section 232.02 is constitutional, i.e., finding, if I can, that its words have meanings of sufficiently common understanding that they can be said to provide fair notice of their proscriptions and, at the same time, avoid arbitrary enforcement. The words principally in issue here are "private school;" the words "parochial" or "denominational" are only peripherally involved. The test is that if it can be commonly understood whether or not the facts of particular schooling circumstances fulfill the common meanings of those words, the parents of children in those circumstances can be constitutionally bound by the statute.
In explaining the conclusion that those words in section 232.02 fail that test this dissent explains in this section (A) how I have undertaken, without success, to employ the broadest, most expansive definitions of those words in an effort to find them to have sufficiently clear common meanings consistent with apparent legislative intent. I have used this broad approach because the legislature has not defined those words and because there is no doubt that those words have no precise, *1236 commonly understood meanings. The aim of this approach is to view the relevant words so broadly that the types of schooling which the statute could be construed to approve would be within almost any reasonable definitions. This is to reflect the judiciary's primary concern in a case like this which is with protecting the constitutional due process interests of citizens.
This broad approach to the words in subsections (2) and (3) as to nonpublic schools is as follows:
"If the Legislature uses a word without defining it then its common or ordinary meaning applies." State v. Little, 400 So.2d 197, 198 (Fla. 5th DCA 1981). The common, ordinary meanings of the relevant words in this case might be derived from definitions in a common dictionary, such as Webster's New World Dictionary (College Ed. 1957). For example, "school" is a place for teaching and learning. Id. at 1304. "Denominational" is an adjective meaning sponsored or controlled by a religious sect. Id. at 392. A "sect" is a group with common beliefs. Id. at 1317. "Religion" is a belief in a divine or superhuman power to be obeyed and worshipped as the creator and ruler of the universe. Id. at 1228. Thus, a denominational school could be thought of as a place for teaching and learning which is sponsored or controlled by a group with a common belief in a divine or superhuman power to be obeyed and worshipped as the creator and ruler of the universe.
"Parochial school" means a school supported and controlled by a church. Id. at 1064. A "church" in this type of situation can be thought of as a particular religious sect. Id. at 262.
As to the meaning of "private school," the legislature has provided some guidance by using the phrase "supported in whole or in part by tuition charges or by endowments or gifts... ." Thus, the parents of a child who regularly attends a place for teaching and learning that is even partially supported by tuition, gifts or endowments could be said to be attending what the statute refers to as a private school.
Under this broad approach, I also note that the fact that common meanings of words may be broad does not necessarily make them vague. Nor would the relevant words here be rendered vague in the constitutional sense by an acknowledgement that a variety of nonpublic schools which are not of the most well recognized type may be within their meanings. For example, in contrast to a Roman Catholic high school, a school supported by a less well known, small religious group might fall within the foregoing definition of a parochial or denominational school. Also, although a person teaching his own children might not come within the foregoing statutorily derived definition of a private school because he could not, in the legal or common and well understood sense, pay himself tuition or give himself endowments or gifts, he might arguably come within that definition if he paid the tuition to a corporation operating the school or if a friend gave him an endowment or gift to partly defray the costs of operating the school.
But I believe that even that broad approach does not yield constitutionally permissible results in this case. Under that broad approach the term "private school" would take on technical, stilted, artificial meanings. For example, under that approach a parent teaching his children at home might seem to be in compliance with the statute if the parent received for those purposes a gift, e.g., pencils or books, from a friend, or if the parent had the foresight to form a corporation so that in his teaching he worked for the corporation and gave school supplies, as well as the use of his home, to the corporation. I do not believe the legislature intended that there be a distinction between (a) parents with their own resources teaching their children at home (unlawful conduct even under the foregoing broad approach) and (b) parents teaching their children at home through a corporation or with some resources received from third parties (lawful conduct under that approach). Also, under that approach neighboring parents could each lawfully teach their children at the other's *1237 home but not at their own and come within the broad definition of private school without concern about what subsection (4) means. I believe such distinctions would be irrational and at least border upon the absurd and therefore be an invalid statutory construction. See Wakulla County v. Davis, 395 So.2d 540, 543 (Fla. 1981). Nor do I believe that, under the foregoing test for whether or not a statute is unconstitutionally vague, the common understanding of citizens of section 232.02 would necessarily be that they could comply with the statute and avoid criminal prosecution by adopting the types of artificial devices referred to above.
Of equal importance, I do not believe that the foregoing broad approach validly reflects the legislature's intent in its use of the term "private school." Under that approach it would seem likely that the underlying legislative purpose of the compulsory education laws could or would be subverted. Surely that purpose relates to ensuring that all children receive some basic education of the type generally understood to be desirable. Cf. section 228.01 ("It is the purpose of the state plan for public education to insure the establishment of a state system of schools, courses, classes, institutions, and services adequate to meet the educational needs of all citizens of the state.") Yet the foregoing broad approach would seem to lead to a result inconsistent with that purpose. Under that approach attendance of children at a "private school" could fulfill statutory compulsory education requirements even if such a school did not teach basic courses, such as reading and arithmetic, and only conducted courses on, for example, pottery and yard maintenance. To thereby attribute to the term "private school" a meaning without real, basic educational significance would seem to be at least an unreasonable perception of legislative intent.

(B) The Most Likely Meaning Approach 
As I have said, the statutory words in issue here do not have precise, commonly understood meanings. In the final analysis I believe the term "private school" in subsection (3) has a commonly understood meaning which is more specific than that derived from the foregoing broad approach and yet is still inherently vague because a citizen bent upon compliance could not know how to comply. In this regard I agree with the conclusion of the Georgia Supreme Court in Roemhild v. State, 251 Ga. 569, 308 S.E.2d 154, 158 (1983) that the term "private school" commonly connotes some sort of organized form of education involving some type of institution. See also State v. Popanz, 112 Wis.2d at 174, 332 N.W.2d at 755. But the relevant Florida Statutes are almost totally silent as to what type of organized education or what type of institution, if any, is meant to be involved.
The same sorts of questions exist in trying to interpret section 232.02 as existed in Georgia and resulted in Roemhild in the declared unconstitutionality, by reason of vagueness, of the relevant Georgia statute:
Must the place of education be an "institution" which many children attend and which has an influx of new students and outflux of graduating students every year, or may parents teach or have their children taught at home? Must the "school" provide for the yearly sequential advancement of students or may students proceed at their own pace? What facilities, such as libraries, classrooms, or playing fields must the "school" provide? What must be the educational background of the teachers  must they be state certified or may "qualified" persons teach? What kind of curriculum and educational materials must be provided  must they rigidly compare to public schools or can a "private school" vary their nature? And, finally, must the time schedule of a "private school" be consistent with that of a public school?
308 S.E.2d at 158
I agree with the Georgia Supreme Court in its adoption of the reasoning of the Wisconsin Supreme Court, which also declared the counterpart Wisconsin statute to be void for vagueness, that "the legislature *1238 or its delegated agent should define the phrase `private school'; citizens or the courts should not have to guess at its meaning... ." Roemhild, 308 S.E.2d at 158, quoting Popanz, 112 Wis.2d at 175, 332 N.W.2d at 755. See Steffens v. State, 343 So.2d 90 (Fla. 3d DCA 1977).

(C) The State v. M.M. Approach 
The state cites State v. M.M., 407 So.2d 987 (Fla. 4th DCA 1981), as support for the proposition that the teaching by a nontutor parent of his children at home is criminal conduct.[2]M.M. reasons that, by specifying in subsection (4) of section 232.02 that "[a]t home with a private tutor" is acceptable conduct, the legislature evidenced its intent that any other at-home teaching is impermissible. However, it seems questionable whether there was a legislative intent to designate teaching of a child at home by his parents, in lieu of the child's public schooling, as necessarily constituting criminal conduct when the parent is not a private tutor. The reason is, as explained above, that it is by no means clear from subsection (3) what the legislature intended the term "private school" to mean. More to the point it is by no means clear that "private school" in subsection (3) was not intended by the legislature to include at-home schooling without a tutor if the at-home schooling meets criteria of the type referred to in the foregoing quotation from Roemhild which would indicate that the child being taught at home is receiving what would be commonly understood to be an adequate basic education.
Concern with the reasoning of M.M. may be otherwise more fully explained as follows. M.M. is to the effect that if a child receives schooling at home, the instruction must be done by a private tutor under the requirements of section 232.02(4) and that any other type of at-home schooling could not comply with the legislative intent behind section 232.02, specifically 232.02(3) regarding private schools; otherwise, according to M.M., the legislature would have included all at-home schooling within subsection (3) and omitted subsection (4). However, that reasoning may either overlook or disregard the not necessarily unrealistic possibility that the legislature could have intended that several types of at-home instruction might satisfy section 232.02. As noted above, in the absence of more specific legislative guidelines, we cannot be sure exactly what type of schooling qualifies as a private school under section 232.02(3). For example, schooling conducted at the home of one of the pupils by an uncertified but well-educated person with teaching experience and otherwise run in a traditional manner in terms of hours of instruction, curriculum, testing, etc., perhaps even following detailed directions from, and with materials supplied by, a well-recognized educational institution, might logically be considered to be a private school within the meaning of subsection (3). Thus, contrary to the indication in M.M., the situs of instruction might not be a necessarily determinative factor as to whether the student is in compliance with one of the subsections of section 232.02. The legislature could have intended that at-home schooling would fulfill the requirements of section 232.02 if the schooling was either in the context of a private school pursuant to subsection (3) or by a private tutor pursuant to subsection (4).
In summary, there seems to be no clear-cut manifestation of legislative intent that a child may not receive schooling at home unless by a private tutor. There is no clear-cut manifestation of legislative intent that subsections (3) and (4) have necessarily mutually exclusive applications. The legislature did not specifically say, as it could have said if that had been its intention, that all at-home schooling must be with a private tutor. Nor, if we are to perceive unmanifested legislative intent *1239 from an avoidance of an absurd or irrational alternative when, as here, we are faced with alternative statutory interpretations (see Wakulla County, supra), do I see anything necessarily absurd or irrational in a possible conclusion that the term "private school" could have been meant to include situations meeting educationally oriented criteria which are not referred to in subsection (4) as to at-home schooling but which could apply to at-home schooling.

(D) This Dissent's Approach 
I have pondered the point of the view represented by M.M. Although section (C) above criticizes that view, I should recognize the closeness of this case by also presenting that view in another, more positive manner, as is undertaken below.
A simple analysis of section 232.02, which is similar to part of the approach apparently taken by the majority opinion, could be that the statute sets out four categories of schooling by which to comply with the compulsory school attendance laws: first  public; second  parochial or denominational; third  private; and fourth  at home. Under this approach a parent bent upon compliance with the law need only look to the appropriate category to determine what conduct is permitted and what is proscribed under that category. Therefore, notwithstanding the vagueness of subsection (3) as to private schools, parents like defendants in these cases who apparently are teaching their children at home would know that that teaching must be by a private tutor. By following up with the pertinent regulations of the state board the parents would know that such a tutor must have a teacher's certificate. Under this so-called "simple analysis," which does not require the statutory construction principle employed in M.M., the vagueness of subsection (3) would not be dispositive. A court will not decide a constitutional issue if another issue is dispositive of the case. Singletary v. State, 322 So.2d 551 (Fla. 1975). This analysis would lead to the conclusion that the constitutional arguments as to subsection (3) would be irrelevant and that in these cases defendants' due process rights would not be involved.
M.M., the holding of which reaches the same result as this simple analysis, draws support from authority elsewhere. Cited in M.M. is People v. Turner, 121 Cal. App.2d Supp. 861, 263 P.2d 685 (1953), where the California legislature's approval of private schooling, on the one hand, and instruction by a private tutor, on the other, as alternatives to public schooling clearly showed that at-home schooling may not be conducted without a private tutor. "[A] mere reading of [the relevant California statute] clearly indicates that the legislature intended to distinguish between private schools, upon the one hand, and home instruction by a private tutor or other person, on the other. If a `private school' as that term is used in [the relevant California statute] necessarily comprehends a parent or private tutor instructing at home, there was no necessity to make specific provision exempting the latter." 263 P.2d at 688. The California court distinguished a facially contrary holding in People v. Levisen, 404 Ill. 574, 90 N.E.2d 213 (1950) by pointing out that the counterpart statute in Illinois did not approve of nonpublic schooling as being either at a private school or by a private tutor.
Similarly, under the M.M. approach the reasoning of Roemhild v. State and State v. Popanz, referred to in section (B) above as support for the conclusion that subsection (3) of section 232.02 is unconstitutionally vague, would not be dispositive here. The Georgia and the Wisconsin statutes which were described in those cases referred only to public and private schools and did not have, as did the California statute in Turner and the Florida statute here and in M.M., another type of permitted schooling, that by a private tutor. Therefore, it can be argued that parents in California and Florida have had substantially more guidance for their conduct than existed in Georgia and Wisconsin.
Further supporting the "simple analysis" described above could potentially be an arguable legislative purpose which could be *1240 attributed to any perceived legislative intent that subsection (4) proscribes all at-home schooling which is without a private tutor. In Turner, the California court, quoting from State v. Hoyt, 84 N.H. 38, 146 A. 170 (1929), said, "While the ultimate object of the statute is the education of the child, means to assure the attainment of that end may be adopted by the state, and may be enforced by the imposition of penalties for violating the regulations made. As stated earlier in this opinion, the state is entitled to establish a system whereby it can be known, by reasonable means, that the required teaching is being done." 263 P.2d at 689. That is, teaching at home was said to be validly restricted for reasons unconnected with the quality of education and only related to facilitating reasonably practicable state supervision of schooling.
However, all of the foregoing arguments in support of the simple analysis and M.M. are not entirely valid. The California statute dealt with in Turner is actually significantly different from section 232.02 in Florida. In contrast to section 232.02, the California statute contains an initial public school requirement and then sets out exceptions to that requirement. One of those exceptions is attendance at a private school. Criteria for a private school are spelled out in the statute (which does not require private school instruction to be by a certified teacher, as explained in Turner, 263 P.2d at 688).[3] The statute then goes on to say that in order to be excepted from the public school requirement, children who do not attend such a private school must be tutored by a private tutor in the same branches of study required in the public school. Turner, 273 P.2d at 686. The California statute, therefore, really says what Turner says it says. Florida section 232.02, on the other hand, needs a method of construction  whether under the foregoing "simple analysis" or like that in M.M.  for its interpretation to be that reached in M.M.
The nub of the problem, it seems to me, involves whether subsection (4), by saying that schooling at home may be with a private tutor, implies that there may be no other type of schooling at home. In arriving at that type of interpretation the court in M.M. used the maxim "ut res magis valeat quam pereat." 407 So.2d at 990. The court reasoned that under that maxim effect should be given to each provision of a statute in construing its effect as a whole, and if subsection (3) would mean that a private school may be at home, there would have been no need to enact subsection (4). For the reasons outlined in section (C) of this dissenting opinion, I question the application of that maxim to the circumstances in this case and in M.M. where parents teach their children at home. I especially question that application in the circumstances which are argued to exist in this case and are said to involve at-home schooling fulfilling basic, educationally oriented criteria and which were not shown to have been involved in M.M.
But I think the real difficulty comes, not from the foregoing maxim, but from the effect of M.M. which I believe is to more nearly apply another legal maxim. By saying that the legislature, in authorizing at-home schooling with a private tutor, impliedly *1241 forbade any other type of at-home schooling, M.M. was, in effect, applying the maxim, "expressio unius est exclusio alterius," which means that the "expression of one thing is the exclusion of another." Black's Law Dictionary 692 (4th ed. 1951).
Therefore, I think that whether the M.M. reasoning is valid in this case turns, in the final analysis, upon whether the "expressio unius" maxim should properly be applied to these circumstances which entail constitutional due process concerns. I think not. The "maxim, `Expressio unius est exclusio alterius,' ... should be sparingly used in construing the constitution ... [and] `should be applied with great caution to the provisions of an organic law relating to the legislative department... .'" Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876, 881 (1944), quoting from State v. Bryan, 50 Fla. 293, 39 So. 929, 956 (Fla. 1905). In Bryan the Florida Supreme Court decided that simply because the legislature had been constitutionally authorized to pass laws excluding from public office persons guilty of certain types of misconduct, the legislature was not thereby impliedly precluded from excluding others from office for other reasons. In Taylor the supreme court decided that simply because the constitution provided that separate property of married women could be charged in certain circumstances for their debts that did not mean that it could be charged only in those circumstances. 19 So.2d at 880-882.
The rationale for applying the "expressio unius" maxim only with great caution in this type of case is reflected by the Florida Supreme Court's opinion in Bryan. Bryan, quoting from an old Ohio case, indicates that if a court says that a statute means things other than what the statute says, the court may improperly be entering into "thought or inquiry as to the wisdom of the [legislative] act or the motives which induced it." Bryan, 39 So. at 956. "Questions as to wisdom, need or appropriateness [of statutes] are for the Legislature." State v. Bales, 343 So.2d 9, 11 (Fla. 1977).
It may well be that some, or even many, parents would read section 232.02(4) as impliedly saying that no type of schooling other than that designated in that subsection, to wit, that with a private tutor, may be at home. But I do not feel entitled to pronounce that other parents could not reasonably interpret the statute to mean otherwise the way defendants do here, i.e., to mean that although the legislature authorized one type of at-home schooling, the legislature did not necessarily prohibit other types  types meeting educationally oriented criteria for private schools. If, as Taylor and Bryan say, courts are to use the maxim "expressio unius" with great caution in interpreting legislative power, so also, I believe, should courts only with great caution, if at all, use that maxim to attribute a common meaning to a statute when the potential penalty for otherwise interpreting the statute is jail.
I do not believe a meaning should be attributed to a statute as being the commonly understood meaning in a criminal case like this simply because I recognize, as I do with respect to the meaning attributed to subsection (4) by M.M., that people may arrive at that meaning when I also recognize, as I do, that others (e.g., those who wish to give private schooling at home) may not. Standards of proscribed criminal conduct, to be constitutionally valid, should be "explicit." Grayned v. City of Rockford, as quoted, supra.
Accordingly, the foregoing so-called "simple analysis" and M.M. provide arguments which can be made for the constitutionality of section 232.02 as applied to this case. However, upon weighing the arguments pro and con as set forth above in this section (D) and in sections (B) and (C), I have concluded that the very fact that the issue is reasonably debatable concerning a proper (and particularly what we must determine to be the commonly understood) meaning of section 232.02 should cause us to declare that section unconstitutionally vague as applied to this criminal case.
I do not conclude that a parent's common understanding of section 232.02 should necessarily be deemed to be pursuant to M.M. or the foregoing "simple analysis" which *1242 would discard as irrelevant the vagueness of subsection (3) and which would require looking at subsection (4) in isolation. M.M.'s interpretation gives meanings to subsection (3) and (4) of the statute which were not stated by the legislature. Subsection (4) does not state that all schooling at home may be only with a private tutor; subsection (3) does not state that a private school may not be at home.
The fact is that the Florida statute is materially lacking as to what the legislature meant with respect to this type of case. Citizens bent upon compliance with section 232.02 may reasonably have difficulty in figuring out what they can lawfully do. Also, law enforcement authorities who cannot clearly perceive the intent of the statute may thereby engage in its arbitrary enforcement.
The colloquy as to section 232.02 which appears in the record between the trial judge and counsel for both sides in the first of these consolidated cases which was heard below is instructive in this regard. That colloquy reflects a debate involving three persons with substantial background in the law who were, in effect, groping, legitimately and understandably, for the intended meaning of that section. (By using the description, "groping," I mean that the over-all gist of the entire colloquy, which included vigorous argument by each lawyer for his side and against the opposing side in the tradition of our adversary system of litigation which is designed to assist the court in arriving at the truth, was that it consisted of a search for the statute's real intent, with an at least implicit recognition that the statute itself is not clear in that respect.) The bulk of the colloquy grew out of the trial judge's concern with the due process considerations which I have referred to. Parents who presumably lack background in legal statutory construction principles, as well as prosecuting authorities who must not arbitrarily enforce the law, should not have to face that same type of groping which I conclude would involve an element of guesswork by those of common understanding. When the interpretation of a criminal statute like this requires guess-work, the statute fails the constitutional test for vagueness. See Grayned v. City of Rockford, supra; Roemhild v. State, supra; Steffens v. State, supra. The provisions of section 232.02 do not "provide explicit standards for those who apply them." Grayned, as quoted supra.
The point is not necessarily what legal interpretation under principles of statutory construction a court, upon analysis, would choose to place upon the statute. The point is to avoid derogating the foregoing due process interests in these criminal cases. The statute does not convey a "sufficiently definite warning as to the proscribed conduct when measured by common understanding... ." Reynolds v. State, supra.
Since I conclude that subsection (3) is unconstitutionally vague, I would declare section 232.02 as a whole unconstitutionally vague. The reasoning for that is explained in section (E) below.
There might be argued to be, as defendants argue here, no direct conflict between this dissenting opinion and M.M. which was a dependency proceeding pursuant to Chapter 29, Florida Statutes (1981), alleging truancy of a child under section 232.011(1)(a) and did not involve a criminal prosecution of parents. Nonetheless, there should not be inconsistent meanings of the corresponding criminal and truancy laws. In neither M.M. nor F. & F., cited in footnote 2 of this opinion, was the constitutionality of section 232.02 put in issue.

(E) The Effect of this Dissent's Approach 
Reading all the foregoing Florida statutes together, a criminal offense is said to be committed if a child does not regularly attend any of the public or listed types of nonpublic schools or receive private tutoring at home. I have concluded that subsection (3) of section 232.02 is unconstitutionally vague and therefore invalid. I do not believe that section 232.02 can be validly read to reflect legislative intent by simply omitting that subsection. If that subsection *1243 were omitted, that would seem to mean that there would be a criminal offense if a child is not in public school, parochial or denominational school, or privately tutored at home, which was clearly not the legislative intent.
Therefore, I conclude that section 232.02 as a whole is unconstitutionally vague in its application to this case. For the reasons discussed above, a parent subject to criminal prosecution under that statute, like each of defendants here, cannot reasonably be expected to determine whether certain nonpublic schooling which his or her child might receive fails to meet the requirements of that section.
Although I have discussed only the constitutional infirmities of section 232.02, I must also note that if section 232.02 is unconstitutionally vague, then section 232.09, which simply mandates "school attendance as required by law" for children aged six to sixteen, is itself vague. The reason is that no reference can then be made by one bent upon compliance with 232.09 to section 232.02 for guidance as to what is required. Accordingly, the voidness of section 232.02 leaves section 232.09 even vaguer and more subject to arbitrary enforcement than before. Further, because of the unconstitutional vagueness of sections 232.02 and 232.09 as applied here, I would also find that there can be no criminal prosecution in cases like this of parents under section 232.19 which designates certain conduct to be a misdemeanor.
Nonetheless, my proposed holding would not necessarily affect all prosecutions under sections 232.19 and 232.09. In situations where a child is in fact not receiving any schooling under even the foregoing broad definition of that term, section 232.02 would be irrelevant. Therefore, my proposed holding would be no impediment to a prosecution in those situations under 232.19 and 232.09. There would then be no due process concerns of the types we have discussed.

Conclusion
As I have explained, I have searched for legislative intent and have pondered possibly intended, rational concepts by which to define the terms used in section 232.02. However, it is not the province of the judiciary in a case like this to fill in gaps in legislation where, as here, that may not be done by logic as to a particular, necessarily rational conclusion or pursuant to a manifestation of legislative intent. See Pfeiffer v. City of Tampa, 470 So.2d 10 (Fla. 2d DCA 1984). Any judicial belief as to whether or not an approved private school should be at the home of a student and as to whether or not subsection (4) of section 232.02 should say that no schooling at home may be without a private tutor would be irrelevant to whether or not parents like those in this case can be criminally prosecuted. Our province and responsibility under these circumstances is, in my view, simply to declare the legislation unconstitutional in its application.
NOTES
[1] Repealed chapter 247 referred to the establishment by the board of private education of standards for private schools, including standards relating to school terms, curriculum, teachers, health, safety, and sanitation. See section 247.16, Florida Statutes (1961).
[2] See also F. & F. v. Duval County, 273 So.2d 15 (Fla. 1st DCA 1973), which held that at-home teaching of a child by his mother violated the truancy laws because the schooling was not at a parochial or denominational school and the mother was not a certified teacher. F. & F. did not deal with subsection (3) of section 232.02 as to private schools, apparently because the child's parents only claimed compliance with subsections (2) and (4).
[3] "... Children who are being instructed in a private full-time day school by persons capable of teaching shall be exempted. Such school shall be taught in the English language and shall offer instruction in the several branches of study required to be taught in the public schools of the State.

The attendance of the pupils shall be kept by private school authorities in a register and the record of attendance shall indicate clearly every absence of the pupil from school for a half day or more during each day that school is maintained during the year... . Children not attending a private full-time day school, and who are being instructed in study and recitation for at least three hours a day for 170 days each calendar year by a private tutor or other person, in the several branches of study required to be taught in the public schools of this State and in the English language shall be exempted. The tutor or other person shall hold a valid State credential for the grade taught. The instruction shall be offered between the hours of 8 o'clock a.m. and 4 o'clock p.m."
Sections 16624, 16625, Cal. Education Code, as quoted in Turner.